Roberta N. ADAMS, Petitioner,

v.

**BOARD OF REVIEW OF the INDUSTRI-
AL COMMISSION, Workers' Compen-
sation Fund of Utah, and Unicorp, Re-
spondents.**

No. 900597–CA.

Court of Appeals of Utah.

Nov. 5, 1991.

Linda M. Barclay (argued), Howard, Lewis & Petersen, Provo, for petitioner.

Richard Sumsion (argued), Salt Lake City, for Workers Compensation Fund of Utah.

Benjamin J. Simms, Salt Lake City, for Industrial Com'n of Utah.

Before BENCH, P.J., and GREENWOOD, and ORME, JJ.

BENCH, Presiding Judge:

Petitioner Roberta Adams seeks review of the Industrial Commission's decision to deny her benefits under the Utah Occupational Disease Disability Law, Utah Code Ann. §§ 35–2–1 to –65 (1988). We vacate the Commission's order.

### FACTS

Adams worked as a telemarketer for Unicorp. Her duties consisted primarily of dialing telephone numbers and talking on the telephone while sitting at a desk. She was not equipped with a headset or any type of automatic dialing equipment. She was required to dial manually and hold the receiver to her ear and mouth. After working at Unicorp for approximately one year, Adams left Unicorp to seek medical attention for debilitating pain she claimed had developed gradually as a result of her employment. In general, Adams now claims that the repetitive motion of calling on a manual phone and holding the phone to her mouth and ear caused her neck pain, neck stiffness, muscle spasm, pain in her right arm and shoulder, a "pins and needles" sensation and numbness in her right shoulder and arm, and fatigue.

When Adams informed her supervisor of her pain, he referred her to his chiropractor, Dr. Robert Pope, for treatment. Dr. Pope examined her and diagnosed her as having "cervico-brachial syndrome, carpal tunnel syndrome, myofascitis, and brachial neuralgia." Adams's condition was subsequently described by Dr. Pope as "repetitive motion syndrome." Dr. Pope also indicated that he believed there was a very high probability that Adams's condition resulted from her job duties.

Adams then began to see another chiropractor, Dr. Arnold Otterson, whose office was closer to her home. Dr. Otterson diagnosed Adams as having acute traumatic cervico-brachial syndrome with associated brachial neuralgia. Dr. Otterson likewise described Adams's condition as repetitive motion syndrome. He treated her for several months and her condition improved. Dr. Otterson indicated to the Industrial Commission that in his professional opinion, Adams's "condition was directly related to her employment due to repetitive use of the phone."

Adams was next seen and evaluated by Dr. Richard Jackson, an orthopedic surgeon. His evaluation indicated that Adams was suffering from a degenerative C5–6 disc. Inasmuch as Dr. Jackson did not deal with head and neck problems, he referred Adams to Dr. Joseph R. Watkins, a neurologist. Dr. Watkins diagnosed Adams as having "work related cervical strain with some head discomfort and right shoulder discomfort" and "stress syndrome with multiple other symptoms, essentially resolved with resolution of work."

The Workers' Compensation Fund (the Fund) required Adams to undergo an independent medical evaluation by Dr. Edward Spencer. Dr. Spencer observed from the medical records that Adams had spondylosis of the C4–5 and C5–6 disc with narrowing at the C5–6 level. He also observed a narrowed L4–5 and L5–S1 disc with osteophyte formation from L5 at the L5–S1 level. Dr. Spencer diagnosed Adams as having probable "conversion disorder," "chronic cervical and lumbar disc disease," "chondromalacia of the patello-femoral joint," and "obesity and poor conditioning." He further found that her major problem was psychological and did not require any additional medical or surgical treatment for her condition.

The Fund then required Adams to be examined by Dr. Leonard W. Jarcho, the

former head of the Neurology Department at the University of Utah. Dr. Jarcho concluded that Adams did not have any neurological problem that he could identify. He also indicated that he believed that the minimal orthopedic problem was not connected to Adams's complaints or her prior employment. Dr. Jarcho described Adams's reactions, activities and movements during the examination as "strange," and concluded that Adams was in need of psychiatric diagnosis and treatment.

As directed by the Fund, Adams was then examined by Dr. David L. McCann, a psychiatrist, who was assisted by Dr. Leslie M. Cooper, a clinical psychologist. Dr. McCann concluded that Adams suffered from a personality disorder and did not have any physical impairment or other problems associated with her employment, but that her complaints were motivated by a desire to obtain compensation.

A hearing was then held where the foregoing conflicting diagnoses were presented to an administrative law judge (A.L.J.). The A.L.J. denied benefits. Adams appealed the A.L.J.'s decision to the Commission, which affirmed the decision and adopted the findings and conclusions of the A.L.J. as its own. Adams now seeks review of the Commission's decision.

Adams presents three claims for our determination: (1) the Commission's findings and conclusions should be reversed because they are insufficient as a matter of law, (2) the Commission's factual findings are not supported by substantial evidence, and (3) her condition constitutes a compensable condition under *Nyrehn v. Industrial Commission*, 800 P.2d 330 (Utah App.1990) (interpreting *Allen v. Industrial Comm'n*, 729 P.2d 15 (Utah 1986)). Inasmuch as we find that the Commission's findings are

insufficient and order additional findings, we do not address points (2) and (3).

## STANDARD OF REVIEW

Our review of the Commission's denial of benefits is governed by the Utah Administrative Procedures Act (UAPA). UAPA provides, in relevant part:

> The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:
>
> . . . .
>
> (h) the agency action is . . . (iv) otherwise arbitrary or capricious.

Utah Code Ann. § 63–46b–16(4) (1990).

■ Adams claims that she is entitled to relief under subsection (h).[1] The question of whether the Commission's action constitutes arbitrary action for want of adequate findings is governed by our determination of whether this court is able to conduct a meaningful review. Whether the findings are adequate is therefore a legal determination that requires no deference to the Commission.

## ADEQUACY OF FINDINGS

■ An administrative agency must make findings of fact and conclusions of law that are adequately detailed so as to permit meaningful appellate review.

> In order for us to meaningfully review the findings of the Commission, the findings must be "sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987) (quoting *Rucker v. Dalton*, 598 P.2d 1336 (Utah 1979)). . . .

---

1. Adams also claims the following subsections of section 63–46b–16(4) constitute grounds for relief:

 (c) the agency has not decided all of the issues requiring resolution;

 (d) the agency has erroneously interpreted or applied the law;

 . . . .

 (g) the agency action is based upon a determination of fact, made or implied by the

agency, that is not supported by substantial evidence when viewed in light of the whole record before the court;

Inasmuch as we reverse the Commission's order because its failure to make adequate findings constituted arbitrary action warranting relief under subsection (h), we need not address the standards of review for subsections (c), (d), and (g).

[T]he failure of an agency to make adequate findings of fact in material issues renders its findings *"arbitrary and capricious"* unless the evidence is "clear, uncontroverted and capable of only one conclusion." *Id.* (quoting *Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983)). *Nyrehn v. Industrial Comm'n,* 800 P.2d 330, 335 (Utah App.1990), *cert. denied,* 815 P.2d 241 (Utah 1991) (emphasis added).

The Utah Supreme Court has clearly described the detail required in administrative findings in order for findings to be deemed adequate.

> [An administrative agency] cannot discharge its statutory responsibilities without making findings of fact on all necessary ultimate issues under the governing statutory standards. It is also essential that [an administrative agency] make subsidiary findings in sufficient detail that the critical subordinate factual issues are highlighted and resolved in such a fashion as to demonstrate that there is a logical and legal basis for the ultimate conclusions. The importance of complete, accurate, and consistent findings of fact is essential to a proper determination by an administrative agency. To that end, findings should be sufficiently detailed to disclose the steps by which the ultimate factual conclusions, or conclusions of mixed fact and law, are reached. *See generally, Rucker v. Dalton,* 598 P.2d 1336, 1338 (Utah 1979). *Without such findings, this Court cannot perform its duty of reviewing [an administrative agency's] order in accordance with established legal principles and of protecting the parties and the public from arbitrary and capricious administrative action.*

*Milne Truck Lines, Inc. v. Public Serv. Comm'n,* 720 P.2d 1373, 1378 (Utah 1986) (emphasis added).

 If agency findings reveal the steps taken by the agency in reaching its decision, the failure to disclose a specific subsidiary finding may or may not be fatal to the agency's decision. A finding may be implied if it is clear from the record, and therefore apparent upon review, that the finding was actually made as part of the tribunal's decision. *See State v. Ramirez,* 817 P.2d 774, 787–788, (Utah 1991).[2] We may not merely assume, however, that an undisclosed finding was in fact made. The party wishing to defend an agency decision must carry its burden of showing that the undisclosed finding was actually made.

> For this Court to sustain an order, the findings must be sufficiently detailed to demonstrate that the Commission has properly arrived at the ultimate factual findings and has properly applied the governing rules of law to those findings.... It is not the prerogative of this Court to search the record to determine whether findings could have been made by the Commission to support its order, for to do so would be to usurp the function with which the Commission is charged.

*Mountain States Legal Found. v. Public Serv. Comm'n,* 636 P.2d 1047, 1052 (Utah 1981).

 The findings made by the A.L.J. and adopted by the Commission in the present case are inadequate in that they do not disclose the steps taken by the Commission in reaching its decision to deny Adams benefits. The Commission's "findings" amount to the following single conclusory statement as to causation: "The preponderance of medical evidence in this case establishes that the applicant's various listed symptoms are not related to her work as a telemarketer at Unicorp."

 Because the Commission concluded that Adams failed to prove causation, the Commission denied her benefits. The Commission correctly indicated in its adopted conclusions of law that causation is one of the ultimate factual conclusions that must

---

2. In so stating, we acknowledge that our ruling in *Nyrehn,* 800 P.2d at 335, a pre-UAPA case, that material subsidiary findings may not be implied is limited under UAPA and the supreme court's language in *Ramirez.* UAPA recognizes the possibility of implied factual findings. *See* section 63–46b–16(4)(g). An agency decision may therefore be upheld under UAPA despite the absence of express written findings regarding a material fact if the reviewing court can determine that the material finding was in fact made, although not expressly written.

be proven by a claimant. *See, e.g., Allen v. Industrial Comm'n,* 729 P.2d 15 (Utah 1986). However, the Commission's conclusion that Adams failed to prove causation, without supporting findings, is arbitrary. "Administrative bodies may not rely upon findings that contain only ultimate conclusions." *Tolman v. Salt Lake County Attorney,* 818 P.2d 23, 31 (Utah App.1991). *See also Vali Convalescent & Care Insts. v. Division of Health Care Financing,* 797 P.2d 438, 448 (Utah App.1990) (statement of ultimate facts alone was essentially pro forma). *Cf. Mountain States Legal Found.,* 636 P.2d at 1052 ("Ultimate findings ... must be sustained if there are adequate subordinate findings to support them"). Given the numerous legal and factual questions regarding causation in this case,[3] the Commission's solitary finding that Adams failed to prove causation does not give the parties any real indication as to the bases for its decision and the steps taken to reach it, nor does it give a reviewing court anything to review.

██ While the purported "Findings of Fact" written by the A.L.J. contain an informative summary of the evidence presented, such a rehearsal of contradictory evidence does not constitute findings of fact. In order for a finding to truly constitute a "finding of fact," it must indicate what the A.L.J. determines in fact occurred, not merely what the contradictory evidence indicates might have occurred. "[I]t is the responsibility of the administrative law judge to resolve factual conflicts." *Lancaster v. Gilbert Dev.,* 736 P.2d 237, 241 (Utah 1987).

As is apparent in the recitation of the various diagnoses presented to the A.L.J., the doctors each had differing explanations for Adams's medical condition and whether it was caused by her employment. The evidence did not merely indicate two possible versions of a fact whereby we could conclude that the denial of benefits neces-

sarily indicates that the Commission accepted one version over another. The evidence shows several possible configurations and degrees of injury and/or disease, if any, and the causes, if any, thereby creating a matrix of possible factual findings. A mere summary of the conflicting evidence in this case therefore does not give a clear indication of the A.L.J.'s or the Commission's view as to what in fact occurred. Since we cannot even determine why the Commission found there was no causation shown, we clearly cannot assume that the Commission actually made any of the possible subsidiary findings. The findings are therefore inadequate.

██ In order for this court to address the errors claimed by Adams, we must have findings that indicate respectively (1) the issues decided, *see* section 63–46b–16(4)(c); (2) the legal interpretations and applications made, *see* section 63–46b–16(4)(d); and (3) the subsidiary factual findings in support of the decision, *see* section 63–46b–16(4)(g). A simple conclusion that Adams failed to prove medical causation does not contain any of the foregoing information.

██ At a minimum, there should have been a finding in the present case identifying the occupational disease or injury, if any, suffered by Adams. The Commission could not logically conclude that Adams's medical condition, if any, was not caused by her employment without first establishing what her medical condition was.[4] This it failed to do. The Commission's findings of fact simply do not "resolve all issues of material fact necessary to justify the conclusions of law and judgment entered thereon." *Parks v. Zions First Nat'l Bank,* 673 P.2d 590, 601 (Utah 1983) (footnote omitted).

██ The Commission should have also given some explanation, factual or legal, as to how Adams failed to prove causation.

3. *See, e.g.,* Utah Code Ann. § 35–2–27(28) (1988); *Allen v. Industrial Comm'n,* 729 P.2d 15 (Utah 1986).

4. *See, e.g., Nyrehn,* 800 P.2d at 335 (error for A.L.J. to apply higher standard required of ap-

plicants with pre-existing conditions that contributed to the injury without first finding that the applicant had a pre-existing condition which contributed to the injury).

An applicant with a pre-existing condition must prove both legal and medical causation. *See Allen,* 729 P.2d at 25–27. The Commission relied upon *Allen,* but its findings do not make it clear whether it believed that Adams failed to prove medical or legal causation. Both issues were apparently involved in this matter. Inasmuch as our standard of review varies depending upon whether Adams failed to prove legal or medical causation, the Commission's failure to identify whether Adams failed to prove legal or medical causation prevents us from reviewing that conclusion.

■ When multiple conflicting versions of the facts create a matrix of possible factual findings, we are unable on appeal to assume that any given finding was in fact made. *See, e.g., Carlton v. Carlton,* 756 P.2d 86, 89 (Utah App.1988) (finding giving only a lump sum total valuation of all marital property was inadequate to permit review of disputed valuations of individual marital assets). Because of the matrix of factual possibilities in the present case, we are unable to conduct a meaningful review. We therefore hold that the Commission's denial of benefits based upon a solitary finding regarding the ultimate issue of causation fails "to disclose the steps by which the ultimate factual conclusions, or conclusions of mixed fact and law, are reached," *id.,* and therefore renders the action arbitrary.

## PREJUDICE

■ Our conclusion that the Commission acted arbitrarily by failing to enter adequate findings and legal conclusions does not end our inquiry, however. As required by section 63–46b–16(4), the agency's error must "substantially prejudice" the petitioner before we may grant relief. The Utah Supreme Court recently indicated in *Morton International, Inc. v. Utah State Tax Commission,* 814 P.2d 581, 584–585 (Utah 1991), that the substantial prejudice language in section 63–46b–16(4) prevents an appellate court from granting relief if an agency error is harmless. The supreme court defined harmless error as being an error "sufficiently inconsequential that . . . there is no reasonable likelihood that the error affected the outcome of the proceedings." *Id.* We also note that when considering an error that is strictly of the agency's own making, such as failing to make adequate findings, any doubt about whether a petitioner was prejudiced is resolved in the petitioner's favor. *Angell v. Board of Review of Indus. Comm'n,* 750 P.2d 611, 613 (Utah App.1988).

■ We recognize as a matter of law the substantial prejudice inherent in the failure to make adequate findings when the evidence is not clear and uncontroverted. *Nyrehn,* 800 P.2d at 335. "The importance of complete, accurate, and consistent findings of fact is essential to a proper determination by an administrative agency." *Milne Truck Lines,* 720 P.2d at 1378. The findings are an integral part of the logical process a tribunal must go through in reaching a decision. *See, e.g., Allred v. Allred,* 797 P.2d 1108, 1114 (Utah App. 1990) (final determination to be supported by adequate findings "made in the course of employing" the analytical approach established by the court on appeal). *Cf. Noble v. Noble,* 761 P.2d 1369, 1372 (Utah 1988) ("trial court *must* make adequate findings and conclusions demonstrating that it has considered [relevant] factors" (emphasis added)). Once an administrative agency attempts to state its findings, identify the applicable law, and articulate its logic, it may discover that critical facts are not properly before it,[5] that the law is other

---

**5.** We recognize that an administrative agency may hear evidence that is legally inadmissible under the technical rules of evidence; under the "residuum rule," however, its findings of fact cannot be based exclusively on such inadmissible evidence. "They must be supported by a residuum of legal evidence competent in a court of law." *Yacht Club v. Utah Liquor Comm'n,* 681 P.2d 1224, 1226 (Utah 1984). *See also* *Mayes v. Department of Employment Sec.,* 754 P.2d 989, 992 n. 1 (Utah App.1988) (explaining inconsistent standards for admitting evidence and relying upon evidence admitted). The process of articulating the critical facts gives an administrative agency pause to ascertain what evidence it may properly rely upon to make such findings in light of the residuum rule. *See, e.g., Tolman,* at 31–32 (at a minimum, issues

than anticipated, or that its initial logic is flawed. In such situations, a result contrary to the initial conclusions of the body may be dictated. The process of articulation clearly enhances agency self-discipline and protects against arbitrary and capricious decisions. Without the safeguard of adequate findings, there is no guarantee that the agency followed a logical process in reaching its decision. If, on the other hand, the agency identifies the facts, law, and reasoning supporting its decision, it reveals its logical process and the parties can be assured that a logical process occured, even if it is in some manner flawed.

If an agency's logical process is flawed, its shortcomings can be corrected on review, but only if the agency creates findings revealing the evidence upon which it relies, the law upon which it relies, and its interpretation of the law. Absent adequate findings, a petitioner wishing to challenge an agency's factual findings will not be able to marshal the evidence in support of the findings. *See generally Grace Drilling Co. v. Board of Review of the Indus. Comm'n,* 776 P.2d 63, 67–68 (Utah App. 1989) (party challenging factual findings of agency must marshal evidence in support of such finding and show that it is not substantial). Nor will a petitioner be able to challenge the agency's undeclared interpretation of the law or its undisclosed logic. *See, e.g., State v. Lovegren,* 798 P.2d 767, 771 n. 11 (Utah App.1990) (trial court's failure to make adequate findings "placed appellate counsel at a disadvantage in framing and developing their arguments on appeal").

■ If findings are inadequate, this court will also be unable to effectively and efficiently perform its duty of review. "To enable this Court to determine whether an order is arbitrary and capricious, the Commission must make findings of fact that are sufficiently detailed to apprise the parties and the Court of the basis for the Commission's decision." *Mountain States Legal Found.,* 636 P.2d at 1051 (citations omitted). While these disadvantages may not be reflected in the initial outcome of the hearing below, they directly affect the ultimate outcome of the matter on review and are therefore relevant to the question of prejudice. It is axiomatic that the denial of Adams's claim without the possibility of meaningful review by this court, as provided for by UAPA, is clearly prejudicial.

The Fund has not established that the Commission's failure to make adequate findings of fact and conclusions of law was harmless as defined in *Morton International,* at 584–585.[6] We therefore resolve any doubt in Adams's favor and hold that Adams was prejudiced by the Commission's failure to make adequate factual findings and legal conclusions.

## RELIEF

■ As a general rule, the appropriate relief for an agency's failure to make adequate findings is to vacate the order complained of and to order the agency to "make more adequate findings in support of, and more fully articulate [the] reasons for, the determination ... made." *Vali Convalescent & Care Insts.,* 797 P.2d at 450. However, as we have acknowledged herein, absent adequate findings there is no presumption that the Commission's decision is correct. The process of articulation may or may not cause the Commission to reach a different decision. Since we vacate the Commission's order denying benefits, it is free to deny benefits or grant benefits as may be dictated by its new findings of fact and conclusions of law.[7]

---

regarding admissibility of evidence should have been addressed in the findings).

6. It is possible in some cases that the failure to make adequate findings is nevertheless harmless. *See, e.g., Nyrehn,* 800 P.2d at 335 (failure to make findings necessary to determine whether a higher legal standard should be applied before applying the higher standard was harmless error when the undisputed facts of the case satisfied the higher standard). *Cf. Olson v. Olson,* 704 P.2d 564, 566–67 (Utah 1985) (even though findings were inadequate as to financial needs of wife, no remand was necessary because even accepting the wife's evidence as true, there was no abuse of discretion by trial court).

7. We express no opinion on the merits of Adams's remaining claims inasmuch as they may be resolved by the Commission's entry of

## CONCLUSION

We vacate the Commission's order denying Adams benefits and direct the Commission to produce adequate findings of fact and conclusions of law and enter a new order.

GREENWOOD and ORME, JJ., concur.

adequate findings. Her remaining claims are best left for another day.