**LaSAL OIL COMPANY, INC., Petitioner,**

**v.**

**DEPARTMENT OF ENVIRONMENTAL QUALITY, Respondent.**

No. 910687–CA.

Court of Appeals of Utah.

Dec. 18, 1992.

---

J. Michael Hansen and Claudia F. Berry, Salt Lake City, for petitioner.

R. Paul Van Dam and Richard K. Rathbun, Salt Lake City, for respondent.

H. James Clegg, Salt Lake City, for Rio Vista Oil, Ltd., Appearing Specially.

Before BENCH, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Appellant, LaSal Oil Co., Inc., appeals from a final order of the Department of Environmental Quality (DEQ) upholding an Order to Abate issued by the Utah Division of Environmental Health and the Utah Solid and Hazardous Waste Committee. We reverse the final order of DEQ's Executive Director and remand.

On appeal, LaSal contends the Executive Director, in his final order, failed to make findings of fact sufficient to support his ultimate conclusions that (1) LaSal's release of petroleum product from its facility in Moab, Utah contributed to the contamination of subsoil and groundwater in the Moab area, and (2) the Order to Abate was legally correct and should therefore be affirmed. LaSal argues primarily that the Executive Director's findings of fact are not sufficiently detailed and thus do not allow meaningful judicial review. The State argues in turn that the Executive Director's findings of fact are legally sufficient and adequately detailed under the Utah Administrative Procedures Act so as to afford meaningful review. In addition, the State argues that "[i]f there is any deficiency in the detail of the findings of fact recited in the DEQ order, this is made up in the hearing officer's Recommended Decision." Essentially, the State argues

that the hearing officer's findings in the Recommended Decision must be considered supplemental to the Executive Director's findings, even though DEQ's, final order did not explicitly adopt the hearing officer's findings as its own.

■ We note at the outset that the question of whether DEQ's decision "constitutes arbitrary action [under the Utah Administrative Procedures Act, Utah Code Ann. § 63–46b–16(4) (1989)] for want of adequate findings is governed by our determination of whether this court is able to conduct a meaningful review." *Adams v. Board of Review*, 821 P.2d 1, 4 (Utah App. 1991). Determining whether the Executive Director's findings are adequate presents a legal question requiring no deference to DEQ. *See id.*

■ In his Recommended Decision, the hearing officer fashioned particularized findings of fact which addressed in great detail the complex scientific evidence presented in the form of data from soil studies, data from monitoring wells, and testimony of expert witnesses who analyzed the data to determine the source of the contamination. The hearing officer's findings clearly indicated the steps by which the recommended decision was made by expressly referring to evidence supporting each finding. The findings of fact made explicit reference to specific exhibits relied upon and to specific data from testing wells and subsoil studies the hearing officer found to be persuasive. The section entitled "Reasons for Hearing Officer's Decision" makes it abundantly apparent that the hearing officer painstakingly considered all the conflicting evidence surrounding the presence of free product at various monitoring wells. For example, the hearing officer explained:

The free product found consistently at MW–16 on the north edge of LaSal's property coincided with the high soil gas readings along that part of the street. The trench determined that this contamination did not come from Rio Vista, and helped establish a "neutral zone" between the two plumes. The water table was usually about 10 feet below the

ground level, and therefore a spill 9 feet or so above the water table would spread laterally along subsoil shelves some distance before reaching the water table. Once on the water, the petroleum products will always flow down-gradient. Because of the close proximity of the free product in MW–16 to the LaSal property, it is inescapable that it originated at LaSal.

The hearing officer's findings, in combination with explanations like the one quoted above, clearly show the steps by which he moved from the voluminous evidence he heard to the conclusions he reached.

By contrast, the Executive Director made vague, conclusory findings of fact which lack detail and explicit reference to specific evidence or exhibits found to be pivotal to the ultimate decision. The Executive Director's three pivotal findings exemplify the conclusory nature of his findings throughout. These findings are as follows:

11. Based on the results of soil gas testing, analysis of soil samples, information of a leak, and monitoring well results, release of petroleum product occurred at some time in the past at the LaSal property.

12. As a result of testing, a leak of petroleum product was identified in early 1986 from the LaSal facilities.

13. Releases of petroleum products from the LaSal facilities have contributed to contamination of soils and groundwater in the Moab area.

"An administrative agency must make findings of fact and conclusions of law that are adequately detailed so as to permit meaningful appellate review." *Adams*, 821 P.2d at 4. In *Milne Truck Lines v. Public Service Commission*, 720 P.2d 1373 (Utah 1986), the Utah Supreme Court stated:

It is also essential that the [agency] make subsidiary findings in sufficient detail that the critical subordinate factual issues are highlighted and resolved in such a fashion as to demonstrate that there is a logical and legal basis for the ultimate conclusions. The importance of complete, accurate, and consistent findings of fact is essential to a proper deter-

mination by an administrative agency. To that end, findings should be sufficiently detailed to disclose the steps by which the ultimate factual conclusions ... are reached.

*Id.* at 1378. Absent such detailed findings, this court "cannot perform its duty of reviewing the [agency's] order in accordance with established legal principles and of protecting the parties and the public from arbitrary and capricious administrative action." *Id. See also Vali Convalescent & Care Inst. v. Division of Health Care Fin.,* 797 P.2d 438, 448 (Utah App.1990) (noting "the importance of adequate findings supporting agency decisions").

Because the findings entered by the Executive Director are vague and conclusory, and because the Executive Director wholly failed to "make *subsidiary findings* in sufficient detail" so as to highlight and resolve "critical subordinate factual issues ... in such a fashion as to *demonstrate ... a logical and legal basis for the ultimate conclusions,*" *id.* at 448 (quoting *Milne,* 720 P.2d at 1378) (emphasis added in *Vali*), we are unable to meaningfully review those findings. Accordingly, we remand to DEQ for the limited purpose of providing the Executive Director an opportunity to formulate more adequate findings in support of, and to more fully articulate the reasons for his decision.

■■■ The State argues that this court should review the Executive Director's decision and the hearing officer's Recommended Decision together, and look to the hearing officer's findings in any area where DEQ's findings are inadequate. However, a hearing officer's decision is "merely a proposal which the ultimate agency decision maker [may] accept or reject." *Vali,* 797 P.2d at 449. This court reviews the "ultimate agency decision"—in this case the Executive Director's order—and not the hearing officer's Recommended Decision. *See id;* Utah Code Ann. § 26–23–2 (1989). The administrative reviewing

authority is "not limited by the examiner's findings." *United States Steel Corp. v. Industrial Comm'n,* 607 P.2d 807, 810 (Utah 1980). Rather, the reviewing authority may, in its review of the record, make its own findings. *See Vali,* 797 P.2d at 448–49. Therefore, any reading of the Executive Director's findings as merely supplemental to those proposed by the hearing officer would ordinarily necessitate an explicit adoption of the hearing officer's findings by the Executive Director. While it might be appropriate to consider the hearing officer's findings if it were clear the Executive Director had adopted the findings despite his failure to say so explicitly, there are at least five factors which, taken together, preclude us from making that leap in this case.

First, the DEQ order does not, as is customary when a higher administrative reviewing authority wishes to adopt an adjudicator's findings in whole or in part, specifically adopt the findings of the hearing officer, or the findings except to the extent inconsistent with DEQ's findings, or particular findings incorporated by reference. Second, before setting out his findings of fact, the Executive Director refers to the Recommended Decision, but with no particular reverence and only in the context of cataloguing what the record consists of. He then enters "the following Findings of Fact" making no reference to the hearing officer's findings.[1] Third, the Executive Director, in the order that follows the findings and conclusions, states specifically that "[f]or the reasons stated above, the Orders to Abate to LaSal and Rio Vista are affirmed," again making no reference to the hearing officer's findings. Fourth, the Executive Director's approach to and organization of the findings suggest a conscious desire on his part to be as general in his "findings" as possible, while, by contrast, the hearing officer had obviously taken great pains to be very detailed and precise in formulating his findings given the con-

---

**1.** The order states, with our emphasis, that "[h]aving reviewed the transcript of the hearing, exhibits, recommended decision, and comments of petitioners and respondent on the Recom-

mended Decision, the *following* Findings of Fact, Conclusions of Law, and Order are entered in these proceedings."

flicting and complex testimony of the experts.[2]

Fifth, in the "Comments" section of the decision, the Executive Director states specific reasons as to why he did *not* accept two particular recommendations of the hearing officer. Contrary to the State's suggestion that, by implication, the Executive Director adopted the balance of the hearing officer's recommended order, including all of his findings, it appears instead that the Executive Director felt constrained to treat two particularly problematic aspects of the hearing officer's decision, namely, (1) the apportionment of liability as between LaSal and Rio Vista, a party at the administrative level who did not seek judicial review, which apportionment the Executive Director concluded was beyond the scope of the proceeding, and (2) the hearing officer's entry of findings concerning Auto Tire, even though Auto Tire was not a party even at the administrative level. Expressly treating these two jurisdictional concerns does not, of itself, answer the separate question of whether the Executive Director accepted all of the hearing officer's factual findings.

In conclusion, the Executive Director's broad, conclusory findings, standing alone, are not adequate to permit proper review. The Executive Director's final order, which makes no specific reference to the hearing officer's findings, but rather suggests the Executive Director intended to formulate his own set of findings to which the hearing officer's findings would not be considered supplemental, prevents us from looking to the hearing officer's Recommended Decision to supply the detail necessary for meaningful judicial review.

For the reasons stated above, we reverse the Order of the Executive Director upholding the Order to Abate, and remand for the entry of adequate findings.[3]

BENCH and JACKSON, JJ., concur.

2. We note that the Executive Director had the benefit of post-Recommended Decision comments from the parties which, inter alia, called attention to the questionable evidentiary foundation of some of the hearing officer's findings. In rendering his decision, it is almost as though the Executive Director saw as the path of least resistance the substitution of generalized findings rather than having to come to terms with the allegedly insufficient evidentiary basis for the hearing officer's key findings.

3. If our inferences are wrong and it was always the Executive Director's intent to adopt as his own the findings of the hearing officer, it will be easy for him to say so. If, as we speculate in note 2, he had concerns about the basis for some of the findings, the proper approach is not to generalize the findings so the specific concerns are submerged, but to face them head on.

Different subsidiary findings may well emerge, but the degree of detail offered by the hearing officer is a good guide to how much detail the Executive Director should offer if he intends to deviate from the recommended findings.

Requiring the Executive Director to provide detailed findings is more than an academic exercise. *See Adams,* 821 P.2d at 7–8 (explaining that detailed findings are critical to a tribunal's analytical process). Because he has not explicitly adopted the hearing officer's findings, we look to the Executive Director's findings to provide us with the factual basis for his decision. Thus, as in *Adams,* "[b]ecause of the matrix of factual possibilities in the present case, we are unable to conduct a meaningful review" without detailed factual findings that disclose the steps by which the Executive Director reached his decision. *Id.* at 7.