**HIDDEN VALLEY COAL COMPANY,**
**Plaintiff and Appellant,**

v.

**UTAH BOARD OF OIL, GAS & MINING**
**and the Utah Division of Oil, Gas &**
**Mining, Defendants and Appellees.**

No. 930073–CA.

Court of Appeals of Utah.

Dec. 1, 1993.

Denise A. Dragoo (Argued), Fabian & Clendenin, Peter Stirba (Argued), Benson L. Hathaway, Jr., Margaret H. Olson, Stirba & Hathaway, Salt Lake City, for plaintiff and appellant.

Jan Graham, State Atty. Gen., William R. Richards, and Thomas A. Mitchell (Argued), Asst. Attys. Gen., Div. of Oil, Gas & Min., Salt Lake City, for defendants and appellees.

Before BENCH, JACKSON and ORME, JJ.

## OPINION

BENCH, Judge:

Hidden Valley Coal Company (Hidden Valley) appeals from the decision of the district court upholding in part the decision of the Utah Board of Oil, Gas & Mining (Board), holding Hidden Valley in violation of certain reclamation standards and imposing civil penalties. We reverse.

## FACTS

In 1978, Hidden Valley's affiliate, Soldier Creek Coal Company (Soldier Creek), purchased a mine site located in Emery County, Utah. In late 1978, Soldier Creek approached the Utah Division of Oil, Gas & Mining (Division) to obtain a permit to mine coal from the mine site. In September 1979, Soldier Creek submitted a mining and reclamation plan detailing its proposal for development and operation of the mine site. In April 1980, the Division approved the mining and reclamation plan, and shortly thereafter, Soldier Creek began mining operations.

Over the next few months, Soldier Creek cut two large pad areas, exposed a coal seam, established drainage ditches, constructed culverts that altered natural runoff and stream flows, installed sediment ponds, and constructed more than three miles of access roads. However, by August 1980, Soldier Creek determined that commercial development of the mine site was not economically feasible and ceased development.

In October 1985, Hidden Valley notified the Division that it had sold its Soldier Creek affiliate and had assumed control of the mine site. Shortly after assuming control, Hidden Valley notified the Division that it planned to reclaim the mine site. In May 1986, Hidden Valley submitted a reclamation plan for Division review. Hidden Valley's reclamation plan required that the mine site be regraded, scarified, and reseeded. In December 1986, the Division approved Hidden Valley's reclamation plan.

After the Division approved the reclamation plan, Hidden Valley began reclamation activities. Between the commencement of reclamation activities and late 1991, the Division inspected the mine site at least fifty-nine times. The Division noted after each inspection that Hidden Valley was in full compliance with all its reclamation permits and standards. In June 1988, the Division approved a Phase I bond release for the mine site, indicating that as a result of its latest inspection "the backfilling, grading, topsoil placement and drainage controls were determined complete." [1]

On November 1, 1991, Division inspector Jess W. Kelley conducted a five and one-half hour inspection of the mine site. Mr. Kelley

[1] Hidden Valley was required to provide a bond for the reclamation work at the mine site. The reclamation was divided into separate phases. At the completion of each phase, Hidden Valley, if it complied with the permit and other reclamation requirements, was allowed to reduce the bond amount.

found Hidden Valley to be in compliance with all permits and performance standards. Mr. Kelley noted that the diversions and revegetation efforts, as well as the placement of markers and signs, were in full compliance. Specifically, Mr. Kelley stated that "[t]he large rip-rap diversions between the 'A' and 'B' seam fill areas is [sic] in good condition and free from obstruction" and "[o]ther Sediment Control Measures—Silt fences at the base of the 'A' seam fill and parallel to the large main diversion are in good repair and have not captured runoff since they were last maintained." Mr. Kelley also found Hidden Valley's drainage controls on the roads to be in good condition and in compliance with all permits and performance standards. Mr. Kelley also noted, "[w]ater bars and diversions on the main reclaimed road are functioning well and are in good condition."[2]

On November 19, eighteen days after the previous inspection, inspector Bill Malencik conducted an inspection of the mine site. Mr. Malencik found Hidden Valley to be in violation of several permit and performance standards. Shortly thereafter, the Division issued a Notice of Violation (NOV) stating that Hidden Valley had failed to: (1) "maintain diversions to be stable" and "minimize erosion to the extent possible" on the road outslope and upslope; and (2) "clearly mark with perimeter markers all disturbed areas" and "seed and revegetate all disturbed areas" on the road and stream outslopes and the road upslopes. Hidden Valley was required to abate all violations found in the NOV. In December, the Division issued a proposed penalty assessment for the NOV totaling $1,220.

After the Division issued the NOV, Hidden Valley petitioned the Division for an informal hearing. On December 20, the Division director held an informal hearing to review Hidden Valley's contentions. In January 1992, the director issued an order upholding the NOV in its entirety. Hidden Valley appealed the decision of the director to the Board.

The chairman of the Board, acting as a hearing examiner, conducted a formal evidentiary hearing on Hidden Valley's contentions. The Board, after considering the chairman's proposed findings of fact and conclusions of law, issued an order upholding the Division's issuance of the NOV. The Board did, however, reduce the total amount of the penalty assessment to $1,090.

■ Hidden Valley filed an appeal in district court seeking judicial review of the Board's order pursuant to Utah Code Ann. § 40–10–30 (1993). The district court heard oral argument and later entered an order upholding in part the Board's decision. The court upheld the Board's decision with respect to the allegations that Hidden Valley had failed to maintain stable diversions, minimize erosion to the extent possible, and seed and revegetate disturbed areas. However, the court overturned the Board's decision with respect to the allegation that Hidden Valley had failed to place perimeter markers on all disturbed areas.[3] Hidden Valley now appeals the Board's order to this court pursuant to section 40–10–30.

## ISSUE

■ Hidden Valley argues that the Board erroneously interpreted and applied the Utah Coal Mining and Reclamation Act (UCMRA), Utah Code Ann. § 40–10–1 to –31 (1993), in concluding that the Division established a prima facie case supported by substantial evidence for its issuance of the NOV and that

---

2. Mr. Kelley also conducted a partial inspection on October 8, 1991, finding Hidden Valley to be in compliance with all permits and performance standards. Mr. Kelley stated that the "haul road diversion, including water bars, was in good condition and contained a good cover of vegetation," and "[u]p to this time, vegetation has been very sparse because of the lack of moisture. Now, happily, due to recent rains, reseeded areas on both 'A' and 'B' seam fills are sustaining a fairly thick growth of vegetation."

3. While we are required to review the actions of the Board and not the district court, see *Cowling v. Board of Oil, Gas & Mining*, 830 P.2d 220, 223 (Utah 1991), the issue of placement of perimeter markers was reversed by the district court and was not appealed to this court by the Division. Therefore, Hidden Valley's alleged failure to properly place perimeter markers is not before this court on appeal.

Hidden Valley failed to rebut the Division's case.[4]

## STANDARD OF REVIEW

■ Our review of the Division's actions under UCMRA is not governed by the Utah Administrative Procedures Act (UAPA). Utah Code Ann. § 40–10–31 (1993). The provisions of UCMRA relating to agency adjudicative proceedings before the Division or Board supersede the procedures and requirements of UAPA. *Id.* Therefore, the standard of review for this appeal is governed by Utah Code Ann. § 40–10–30 (1993) and pre-UAPA case law.

Section 40–10–30 provides, in pertinent part:

(1) An appeal from a rule or order of the board shall be a trial on the record and is not a trial de novo. The court shall set aside the board action if it is found to be:

(a) unreasonable, unjust, arbitrary, capricious, or an abuse of discretion;

(b) contrary to constitutional right, power, privilege, or immunity;

(c) in excess of statutory jurisdiction, authority, or limitations;

(d) not in compliance with procedure required by law;

(e) based upon a clearly erroneous interpretation or application of the law; or

(f) as to an adjudicative proceeding, unsupported by substantial evidence on the record.

For cases decided outside the confines of UAPA, "[w]hen a lower court reviews an order of an administrative agency and we exercise appellate review of the lower court's judgment, we act as if we were reviewing the administrative agency decision directly." *Cowling v. Board of Oil, Gas & Mining,* 830 P.2d 220, 223 (Utah 1991) (citing *Bennion v. Utah State Board of Oil, Gas & Mining,* 675 P.2d 1135, 1139 (Utah 1983)).

■ Prior to the adoption of UAPA, agencies' findings of fact were "granted considerable deference and would not be disturbed on appeal if supported by substantial evidence." *Morton Int'l, Inc. v. State Tax Comm'n,* 814 P.2d 581, 585 (Utah 1991). Substantial evidence has been defined to be "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Johnson v. Board of Review,* 842 P.2d 910, 911 (Utah App.1992) (quoting *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 68 (Utah App.1989)).

## ANALYSIS

■ Hidden Valley argues that the Division has not established a prima facie showing of the facts supporting its NOV. The Division has the burden of establishing a prima facie case as to the fact of a violation under UCMRA.[5]

■ The evidence is uncontroverted that up until November 1, 1991, Hidden Valley was in full compliance with the reclamation plan. Because the Division certified that Hidden Valley was in full compliance on November 1, the Division was required to establish that some intervening event or condition occurred between the November 1 and No-

---

4. Hidden Valley raises two additional issues on appeal: (1) whether the Board erroneously interpreted and applied UCMRA and Utah law in concluding that the Division was not estopped from enforcing its NOV after it had repeatedly found the mine site to be in compliance with the reclamation plan and applicable law; and (2) whether the Board erred in concluding that the statute of limitations did not bar issuance of the NOV. Because of our holding on Hidden Valley's prima facie case argument, we need not reach Hidden Valley's additional issues.

The Division argues that this appeal is moot because Hidden Valley complied with the NOV by submitting an abatement plan. However, the underlying purpose of the NOV was physical abatement of the alleged violations found in the NOV, not merely the filing of an abatement plan. Hidden Valley has not undertaken any physical abatement under the NOV. This appeal is therefore not moot and the Division's argument to the contrary is without merit.

5. UCMRA is virtually identical to its federal counterpart, the Surface Mining Control and Reclamation Act (SMCRA). *See* 30 U.S.C. §§ 1201 to 1328 (1977). Under SMCRA, the Office of the Secretary of the Interior carries the burden of establishing a prima facie showing of a violation. *See* 43 C.F.R. § 4.1171(a). Based on this model, we likewise conclude that the Division bears the initial burden of establishing a prima facie showing of a violation under UCMRA.

vember 19 inspections in order to establish a prima facie showing that Hidden Valley was not in full compliance. The Division could also try to establish that its prior inspections were somehow deficient such that noncompliance actually occurred prior to November 1, 1991.

### Failure to Maintain Stable Diversions

The Board found that Hidden Valley "failed to comply with the Permanent Program standards and the approved Reclamation Plan by failing to adequately construct and maintain erosion control structures on the outslopes of the access haul road." Based on this finding, the Board upheld the portion of the Division's NOV that cited Hidden Valley for failing to maintain stable diversions. At the formal hearing before the Board, the Division presented no evidence to indicate that in the eighteen days prior to the inspection giving rise to the NOV, there had been any change in conditions or circumstances with regard to the stability of the diversions on the road outslopes. Neither did the Division present any evidence that it had previously notified Hidden Valley that it was close to a violation with respect to the diversions. While inspector Malencik did testify that during the inspection he conducted in April 1991 he considered several areas of the mine site, apparently including the diversions, to be close calls, he also testified that he only indicated that they should be watched because they had the potential to become problems. His report from that inspection indicated that Hidden Valley was in full compliance. Consequently, the Division has not supported this portion of its NOV with substantial evidence on the record. *See Morton Int'l,* 814 P.2d at 585; Utah Code Ann. § 40–10–30(1)(f) (1988) (court will set aside Board's action if an adjudicative proceeding is "unsupported by substantial evidence on the record"). The Division has not established a prima facie showing that Hidden Valley had, between November 1 and November 19, failed to maintain stable diversions at the mine site. In light of the lack of record evidence supporting the Division's position, the Board's decision to uphold this portion of the NOV was arbitrary and capri-

cious. We therefore conclude that the Board erred in upholding this portion of the NOV.

### Failure to Minimize Erosion

■■■■ The Board made no findings with regard to Hidden Valley's alleged failure to "minimize erosion to the extent possible." This court has reiterated that an administrative agency must make findings of fact that are sufficiently detailed so as to permit meaningful appellate review. *Adams v. Board of Review of Indus. Comm'n,* 821 P.2d 1, 4 (Utah App.1991).

> In order for us to meaningfully review the findings of the [Board], the findings must be "sufficiently detailed and include enough subsidiary facts to disclose the steps taken by which the ultimate conclusion on each factual issue was reached. . . ." [T]he failure of an agency to make adequate findings of fact in material issues renders its findings "*arbitrary and capricious*" unless the evidence is "clear and uncontroverted and capable of only one conclusion."

*Id.* at 4–5 (quoting *Nyrehn v. Industrial Comm'n,* 800 P.2d 330, 335 (Utah App.1990) (citations omitted), *cert. denied,* 815 P.2d 241 (Utah 1991)). We may not, however, assume that an undisclosed finding was in fact made. *Id.* at 5. The party defending the agency's action bears the burden of showing that the undisclosed finding was actually made. *Id.*

> For this Court to sustain an order, the findings must be sufficiently detailed to demonstrate that the [Board] has properly arrived at the ultimate factual findings and has properly applied the governing rules of law to those findings. . . . It is not the prerogative of this Court to search the record to determine whether findings could have been made by the [Board] to support its order, for to do so would be to usurp the function with which the [Board] is charged.

*Id.* (quoting *Mountain States Legal Found. v. Public Serv. Comm'n,* 636 P.2d 1047, 1052 (Utah 1981)).

Our review of the record reveals no evidence indicating that Hidden Valley failed to take adequate steps to minimize erosion between the November 1 and November 19

inspections. Inspector Malencik testified that, in his opinion, there were several additional steps Hidden Valley could have taken to minimize erosion, but did not identify any specific steps that Hidden Valley had apparently failed to take during that eighteen-day period. The Board made no findings with respect to Hidden Valley's alleged failure to minimize erosion, and there was no evidence presented that would have supported such a finding. In light of the absence of evidence, the Board could not have found that Hidden Valley had, between November 1 and November 19, failed to take all reasonable steps to minimize erosion. We therefore conclude that the Board erred in upholding this portion of the NOV.

### Failure to Seed and Revegetate Disturbed Areas

The Board found that Hidden Valley "failed to comply with the Permanent Program standards and the approved Reclamation Plan by having failed to seed the disturbed area constituting the outslopes of the access road." Based on this finding, the Board upheld that portion of the Division's NOV that cited Hidden Valley for failing to seed and revegetate disturbed areas.

There is some dispute in the record as to whether Hidden Valley failed to seed and revegetate the disturbed areas. However, the Division did not introduce any evidence that Hidden Valley had failed to meet seeding and revegetating requirements between November 1 and November 19. Consequently, the Division has not supported this portion of the NOV with substantial evidence on the record. The Division has not established a prima facie showing that Hidden Valley had, between November 1 and November 19, failed to seed and revegetate all disturbed areas at the mine site. In light of the lack of record evidence supporting the Division's position, the Board's decision to uphold this portion of the NOV was arbitrary and capricious. We therefore conclude that the Board erred in upholding this portion of the NOV.

### CONCLUSION

The Division failed to establish a prima facie showing of the facts underlying the violations charged in the NOV. We therefore reverse the Board's decision upholding the Division's issuance of the NOV and vacate the Division's penalty assessment against Hidden Valley.

JACKSON and ORME, JJ., concur.