2005 UT App 490

**Nancy M. WOOD, Petitioner,**

v.

**LABOR COMMISSION; Eastern Utah Broadcasting; Workers' Compensation Fund; and/or Employers' Reinsurance Fund, Respondents.**

**No. 20040977–CA.**

Court of Appeals of Utah.

Nov. 10, 2005.

---

6. In its order, the Board "affirm[ed] and adopt[ed] [the ALJ]'s findings of fact."

Jay Barnes and Bradford D. Myler, Orme, for Petitioner.

Alan L. Hennebold, Lorrie Lima, James R. Black, Steven L. Ingleby, Black and Ingleby, and Floyd W. Holm, Salt Lake City, for Respondents.

Before BILLINGS, P.J., DAVIS and ORME, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Petitioner seeks review of a final order issued by the Appeals Board of the Utah Labor Commission (Commission). We vacate the Appeals Board's order and remand.

## BACKGROUND

¶ 2 Petitioner was employed by Eastern Utah Broadcasting (EUB) from 1980 until March 2000 as a salesperson and a sales manager. As a salesperson, Petitioner had full responsibility, from sale to collection, for fifty to two hundred accounts, and her duties included selling radio time spots, gathering information necessary to write ads, drafting

the text of ads, preparing billing, and collecting money due. To sell radio time spots, Petitioner met with potential customers and made proposals for advertising. She was also required to make phone contact with each account at least once per week, and actually carried two cell phones. She often received phone calls as early as 5:00 a.m. and as late as 11:00 p.m., and it was not uncommon for both phones to be ringing at the same time. Moreover, Petitioner dealt with angry customers and was publicly reprimanded by her boss in the event that there was an error in the advertising.[1] Due to the high turnover rate at EUB, there were years in which Petitioner was responsible for every aspect of every account at EUB, including all contact with the clients as well as all administrative duties related to those accounts.[2] When Petitioner was promoted to a sales manager in 1997, she assumed the responsibilities of hiring and training new sales people in addition to handling her own accounts.

¶ 3 On March 16, 2000, Petitioner had a nervous breakdown and was unable to go to work. She saw several physicians to treat her anxiety, all of whom agreed that Petitioner was unable to return to employment. In February 2001, Petitioner filed an Application for Hearing with the Commission, seeking disability compensation under the Utah Occupational Disease Act for mental stress related to her employment. *See* Utah Code Ann. §§ 34A–3–101 to –112 (2001). Petitioner's hearing was held in March 2002, after which an Administrative Law Judge (ALJ) held that Petitioner suffered a compensable occupational disease and referred her claim to a medical panel to determine what portion of Petitioner's medical condition was attributable to the occupational disease claim. The medical panel determined that 50% of Petitioner's medical condition was attributable to the occupational disease claim and 50% was attributable to non-work related factors.[3] In

July 2003, the ALJ issued findings of fact, conclusions of law, and an order consistent therewith.

¶ 4 Respondents filed a Motion for Review with the Utah Labor Commission Appeals Board (Appeals Board). The Appeals Board issued an order reversing the ALJ's order and holding that Petitioner failed to demonstrate legal causation because she had not shown that the demands put upon her at work "were extraordinary when compared to the demands of modern employment and nonemployment life" as required by Utah Code section 34A–3–106. *See id.* § 34A–3–106(1), (2) (2001). Petitioner filed a timely Petition for Review with this court.

## ISSUE AND STANDARD OF REVIEW

¶ 5 Petitioner argues that the Appeals Board applied the incorrect standard for determining legal causation pursuant to Utah Code section 34A–3–106(2). *See id.* § 34A–3–106(2). "[A]n agency's interpretation or application of statutory terms should be reviewed under the correction-of-error standard." *Esquivel v. Labor Comm'n,* 2000 UT 66, ¶ 14, 7 P.3d 777. An exception to this general rule exists "if the legislature has either explicitly or implicitly granted discretion to the agency." *Id.* In these cases, "an agency's statutory construction should only be given deference when there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language." *Id.* at ¶ 16 (quotations and citation omitted).

¶ 6 Utah courts have held that an agency has no discretion to interpret or apply the terms of a statute where, as here, those terms are specific and mandatory, as opposed to discretionary and permissive. *See, e.g., id.* at ¶¶ 15–19 (rejecting the argument

---

1. Petitioner took responsibility for errors that were out of her control, such as when a radio announcer read the text of an ad incorrectly.

2. In addition to her duties as a salesperson, Petitioner was at times responsible for managing a radio shopping show, which required her to collect items from merchants for which listeners would bid. She also coordinated live broadcasts

each morning from remote business locations and was present during many of these shows.

3. The medical panel determined that "[t]here were stresses other than her job situation" that contributed to Petitioner's medical condition, including "chronic low back pain," "a personality type which may predispose her to stress and anxiety," and "chronic headaches."

that the Commission has broad discretion to interpret the Utah Labor Code and holding that correction-of-error standard is appropriate where "the statutory terms ... are of a specific nature and do not connote a general grant of discretion"); *Anabasis, Inc. v. Labor Comm'n,* 2001 UT App 239,¶ 28, 30 P.3d 1236 (interpreting a statute that states that the Commission *"may* impose a penalty against the employer," the court held that "[t]he word 'may' is the legislative grant of discretion to the Commission"); *Ashcroft v. Industrial Comm'n,* 855 P.2d 267, 269 (Utah Ct.App.1993) (holding that the Industrial Commission is explicitly granted discretion by a statute that states that it "may" take certain action); *Luckau v. Board of Review of the Indus. Comm'n,* 840 P.2d 811, 813–14 (Utah Ct.App.1992) (stating that the Industrial Commission is not granted discretion to interpret a statute stating "[w]here compensation is payable for an occupational disease the only employer liable *shall* be the employer in whose employment the employee was last injuriously exposed to the hazards of such disease" (emphasis added)); *Stokes v. Board of Review of the Indus. Comm'n,* 832 P.2d 56, 58 (Utah Ct.App.1992) (holding that a statute, which states that an employee injured by accident arising out of and in the course of his employment *"shall* be paid compensation for loss sustained," does not expressly or impliedly grant discretion to the Industrial Commission (emphasis added)).[4]

■ ¶ 7 Here, the relevant portions of Utah Code section 34A-3-106 state that:

(1) Physical, mental, or emotional diseases related to mental stress arising out of and in the course of employment *shall* be compensable under this chapter only when there is a sufficient legal and medical causal connection between the employee's disease and employment.

(2) (a) Legal causation *requires* proof of extraordinary mental stress arising predominantly and directly from employment.

(b) The extraordinary nature of the alleged mental stress is judged ac-

cording to an objective standard in comparison with contemporary national employment and nonemployment life.

Utah Code Ann. § 34A-3-106(1), (2) (emphases added). The applicable terms of this statute are specific and mandatory, and do not connote any discretion whatsoever. Because the Commission and the Appeals Board are not granted any discretion to interpret or apply the terms of Utah Code section 34A-3-106(1) and (2), we review the Appeals Board's interpretation and application of those sections under the correction-of-error standard. *See Esquivel,* 2000 UT 66 at ¶ 14, 7 P.3d 777.

### ANALYSIS

¶ 8 Pursuant to Utah Code section 34A-3-106, mental or emotional diseases related to mental stress arising out of and in the course of employment are compensable when there is sufficient legal and medical causation between the employee's disease and employment. *See* Utah Code Ann. § 34A-3-106(1). Legal causation requires proof of extraordinary mental stress arising predominantly and directly from employment, and the extraordinary nature of the alleged mental stress is judged "according to an objective standard in comparison with contemporary national employment and nonemployment life." *Id.* § 34A-3-106(2). Here, the Appeals Board ruled that Petitioner had "failed to meet the requirement of legal causation." Its entire analysis on the issue consisted of the following:

The evidence in this case establishes that [Petitioner] worked for [twenty] years in the challenging and demanding field of radio advertising sales. The record also establishes that [Petitioner] carried a heavy work load and worked substantial hours. Furthermore, her supervisor was "intense" and "powerful," apparently given to forceful expressions of both criticism and praise. However, many occupations impose demands on a worker's time, as well as pressures for performance. [Petition-

---

**4.** In 1997, the Labor Commission assumed responsibility from the Industrial Commission for the enforcement of Title 34A, the Utah Labor Code. *See* Utah Code Ann. § 34A-2-101 compiler's notes (2001).

er's] own testimony indicates that all radio sales positions involve the same types of demands and pressures that she faced. While [Petitioner's] work involved substantial demands, the Appeals Board cannot conclude from the evidence presented that these demands were extraordinary when compared to the demands of modern employment and nonemployment life.

¶ 9 Petitioner contends that the Appeals Board applied the incorrect standard for determining legal causation, evaluating her case by referencing other jobs similar to hers rather than national employment and nonemployment life as a whole. Respondents, on the other hand, argue that "the Appeals Board's single reference to [Petitioner's] comments about her own profession does not evidence that the [Appeals] Board failed to use a contemporary national employment and nonemployment life standard in arriving at its conclusions of law and order." While this may be true, "[a]n administrative agency must make findings of fact and conclusions of law that are adequately detailed so as to permit meaningful appellate review." *LaSal Oil Co. v. Department of Envtl. Quality*, 843 P.2d 1045, 1047 (Utah Ct.App.1992) (quotations and citation omitted); *see also Adams v. Board of Review of the Indus. Comm'n*, 821 P.2d 1, 6 (Utah Ct.App.1991) (vacating an order by the Industrial Commission for insufficient findings, we stated that "the Commission's solitary finding that [petitioner] failed to prove causation does not give the parties any real indication as to the bases for its decision and the steps taken to reach it, nor does it give a reviewing court anything to review"). "If an agency's logical process is flawed, its shortcomings can be corrected on review, but only if the agency creates findings revealing the evidence upon which it relies, the law upon which it relies, and its interpretation of the law." *Adams*, 821 P.2d at 8. Otherwise, a petitioner will not "be able to challenge the agency's undeclared interpretation of the law or its undisclosed logic." *Id.* Here, it is entirely unclear whether the stress of Petitioner's employment was compared to the stress sustained by those in her own profession of radio advertising sales or compared to the objective standard of contemporary na-

tional employment and nonemployment life. As such, the Appeals Board's findings of fact and conclusions of law are not adequately detailed so as to permit meaningful appellate review. *See LaSal Oil*, 843 P.2d at 1047.

¶ 10 Regardless of the fact that the Appeals Board may have compared the stress of Petitioner's employment to the stress sustained by those in her own profession (as opposed to the stress found in contemporary national employment and nonemployment life), Respondents argue that the Appeal Board's order should be sustained because "there is persuasive case law in other states that presents relevant rationales for using a national average of the same or similar work experience as the standard for causation." We disagree. First and foremost, when construing the language of a statutory provision, we "presume that the legislature used each word advisedly" and "will not infer substantive terms into the text that are not already there." *Associated Gen. Contractors v. Board of Oil, Gas & Mining*, 2001 UT 112, ¶ 30, 38 P.3d 291 (quotations and citations omitted). The statute in question here simply requires that the stress of Petitioner's employment be compared to "contemporary national employment and nonemployment life." Utah Code Ann. § 34A–3–106(2)(b). Nothing in the statute implies that the "contemporary national employment and nonemployment life" is limited to the same or similar work experience as that of Petitioner. Because we "will not infer substantive terms into the text" of the statute, *see Associated Gen. Contractors*, 2001 UT 112 at ¶ 30, 38 P.3d 291 (quotations and citation omitted), we refuse to hold that the extraordinary nature of the alleged mental stress referenced in section 34A–3–106(2)(b) may be determined by comparing the stress of Petitioner's employment to the stress sustained by those in her own profession.

¶ 11 We are also guided by Utah cases interpreting language similar to that found in section 34A–3–106. In *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), the sole issue on appeal was whether the claimant, who had suffered preexisting back prob-

lems and was injured as a result of an exertion usual and typical for his job, qualified for compensation under the Workers Compensation Act. *See id.* at 18. The court determined that, to recover, a claimant must show that the injury occurred by accident, *see id.* at 18–22, and that there was legal and medical causation between the injury and the employment, *see id.* at 22–27. To demonstrate legal causation, a claimant must show that the employment contributed something substantial to increase the risk he already faced in everyday life. *See id.* at 25. This additional element of risk in the workplace is usually supplied "by an exertion greater than that undertaken *in normal, everyday life.*" *Id.* (emphasis added).

¶ 12 While we recognize that this is not a Workers Compensation case, we are still guided by *Allen's* interpretation of the language "an exertion greater than that undertaken *in normal, everyday life.*" *Id.* (emphasis added). The court stated that "the comparison between the usual and unusual exertion [should] be defined according to an objective standard," noting that "the comparison is not with *this employee's* usual exertion in *his employment* but with the exertions of normal nonemployment life of this or any other person."[5] *Id.* at 26 (quotations and citation omitted). In defining the "objective standard of comparison," the court clarified that the focus is on what activities "are generally expected of people in today's society." *Id.* (listing examples of "[t]ypical activities and exertions expected of men and women," such as taking out the trash, carrying luggage, changing a flat tire, lifting a child, and climbing stairs).

¶ 13 Similar to the language in *Allen*, section 34A–3–106(2) states that the extraordinary nature of the alleged mental stress is judged according to "an objective standard in comparison with contemporary national employment and nonemployment life." Utah Code Ann. § 34A–3–106(2)(b). And like the

objective standard in *Allen*, which focuses on what is "generally expected of people in today's society" and not on the exertions of a specific employee in a specific field, *Allen*, 729 P.2d at 26, the objective standard referenced in Utah Code section 34A–3–106(2)(b) requires the Commission to compare the stress of Petitioner's employment with the stress that people nationwide generally endure in their employment and nonemployment life rather than the stress sustained by those in Petitioner's profession.

## CONCLUSION

¶ 14 Under Utah Code section 34A–3–106(2)(b), the extraordinary nature of the stress of Petitioner's employment must be judged according to an objective standard in comparison with contemporary national employment and nonemployment life, *see* Utah Code Ann. § 34A–3–106(2)(b), rather than with employees in her own profession. Because it is unclear whether the stress of Petitioner's employment was compared to the stress sustained by those in her own profession of radio advertising sales or compared to the objective standard of contemporary national employment and nonemployment life, we vacate the Appeals Board's order and remand for the Appeals Board to apply the correct standard in accordance with this opinion.

¶ 15 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge, and GREGORY K. ORME, Judge.

---

**5.** We also recognize that *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), requires a comparison to "normal *nonemployment* life" alone, *see id.* at 26 (emphasis added), while section 34A–3–106 requires a comparison to "national *employment and nonemployment* life," *see* Utah Code Ann. § 34A–3–106(2)(b) (2001) (em-

phasis added). By comparing the language in *Allen* to the language set forth in section 34A–3–106, we are not implying that the stress of Petitioner's employment here may be compared to national nonemployment life alone. Rather, we are using *Allen* simply for guidance in interpreting the terms of Utah Code section 34A–3–106.