John C. PAPPAS, Plaintiff
and Appellant,

v.

RICHFIELD CITY, Defendant
and Appellee.

No. 970223.

Supreme Court of Utah.

July 21, 1998.

Marcus Taylor, Dale P. Eyre, Richfield, for plaintiff.

Ken Chamberlain, Richfield, Kendrick J. Hafen, Santa Clara, for defendant.

HOWE, Chief Justice:

Plaintiff John C. Pappas appeals from an order granting defendant Richfield City summary judgment. Pappas asserts that the trial court erred in holding that the property owners opposing the creation of a special improvement district ("SID") proposed by Richfield City failed to file sufficient protests to defeat the creation. He specifically contends that Sevier School District property was erroneously included in the calculation of the total number of protests needed to defeat the creation of the SID because such property is exempt from local assessments.

## FACTS

The facts of this case are undisputed. In December 1996, Richfield City adopted a resolution proposing to create Richfield City Special Improvement District 1997–1 for repaving and installation of curb and gutter on certain city streets. The City then mailed a "notice of intention" to each owner of property to be assessed within the SID and published the same in the local newspaper as required by Utah Code Ann. §§ 17A–3–305 and –306. This notice provided that the SID would be created unless protests representing at least 50% of the assessable front footage were filed by January 13, 1997.

Both Pappas and the Sevier School District owned property in the proposed SID. Before the expiration of the protest deadline, Pappas filed a protest opposing the creation of the SID. The school district, on the other hand, unanimously passed a resolution that it would not protest the SID. The school district later passed another resolution, which stated in part:

RESOLVED that the Board of Education of Sevier School District ("District" or "Board of Education") requests, under § 17A–3–315, U.C.A.1953 that the District be included in the Richfield City Special Improvement District 1997–1 ("Special Improvement District") as provided in § 17A–3–16(2) and *the Board of Education hereby voluntarily consents to an assessment and the levy of assessments on those properties described hereinafter and in its participation in the Special Improvement District,* the Board of Education requests under § 17A–3–315(1) that the services and materials be rendered and supplied by the City of Richfield to the property of the District hereinafter described, the same and as part of the assessments which are to be levied under § 17A–3–307(3)(b)(i).

(Emphasis added.)

At the expiration of the protest deadline, the total number of filed protests opposing the SID equaled 12,836.53 linear feet. The city engineer determined that there was a total of 28,306.41 linear feet of assessable frontage within the proposed SID. However, this total included 4,138.13 linear feet of property that was owned by the school district. Thus, by including the school district property in the calculation of the total front footage, the protests filed amounted to only 45% of the front footage, not sufficient to defeat the SID. But if the school district property had been excluded from the calculation, then the protests would have equaled 53% of the front footage, more than sufficient to defeat the SID. *See* Utah Code Ann. § 17A–3–307(3)(b)(i). On the basis of the

city engineer's calculations, the City determined that the SID had not been defeated by the protests.

Following the creation of the SID, Pappas filed this action alleging that the protests were sufficient to defeat the SID because the school district property was exempt from assessment by the City, and therefore could not be included in the total calculation of assessable front footage. He sought a permanent restraining order enjoining the City from proceeding with the creation of the SID and the assessment. The City answered the complaint contending that the school district property was properly included in the total calculation because the school district had voluntarily consented to the assessment.

Both Pappas and the City moved for summary judgment in the court below. After considering the parties' arguments, the court granted the City's motion, holding that the school district property was correctly included in the calculation of assessable front footage and that the creation of the SID was therefore valid. Pappas appeals.

## ANALYSIS

A party is entitled to summary judgment only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1039 (Utah 1991). Furthermore, we review the trial court's interpretation of statute for correctness and accord no deference to its conclusions of law. *See Platts v. Parents Helping Parents,* 947 P.2d 658, 661 (Utah 1997).

The question that we must resolve in this case is whether the property owners opposing the creation of the SID filed sufficient protests to defeat it. As stated above, the answer to this question turns on whether the school district property was properly included in the total calculation of the assessable front footage in the SID.

Pappas relies on *Armstrong v. Ogden City,* 12 Utah 476, 494–95, 43 P. 119, 121 (1895), to argue that this court has already held that public property which is exempt from assessment may not be included in calculating the total number of protests needed to defeat a proposed improvement district. In that case, the city proposed to create an improvement district and levy an assessment against the abutting property to pay for a portion of the improvement costs. The total number of protests filed opposing the creation of the district equaled 1,878½ feet. *See id.* 43 P. at 121. The city argued that these protests were not sufficient to defeat the proposal because the total front footage equaled 3,960 feet. However, this calculation included 660 feet that was owned by the city and not subject to assessment. In holding that the city property was improperly included in the total calculation of the front footage, this court stated:

> So far as proceeding with the improvement or assisting in acquiring jurisdiction are concerned, we have been unable to find any case where public property situated within the confines of a local improvement district has been permitted to affect the result, either one way or the other; and we think that the establishment of such a rule would not only be wrong in principle and wrong in theory, but it would also be contrary to the spirit and intention of the statutes providing for special improvement assessments.

*Id.*

The City, on the other hand, asserts that *Armstrong* is inapposite because the school district in the instant case voluntarily agreed to an assessment against its property so as to pay its share of the improvement costs. It argues that *Armstrong* stands for the narrow proposition that where the owner of public property does not agree to pay for its portion of the improvement costs and is not otherwise subject to an assessment, that property may not be included in the calculation of the total number of protests needed to defeat the creation of the SID. It maintains that the opposite result should occur where the owner of the public property has agreed to pay its share of the improvement costs. For the reasons stated below, we disagree.

In our view, the Utah Municipal Improvement Act, Utah Code Ann. § 17A-3-307, is determinative of this case. That section provides in part that "[t]he governing

body shall abandon the district and not create it if the necessary number of protests ... have been filed." Utah Code Ann. § 17A–3–307(3)(a)(i). Subsection (3)(b)(i) of that same statute further provides that "the necessary number of protests [to defeat a SID] means the aggregate of the following: (i) protests representing one-half of the front footage *to be assessed* where an assessment is proposed to be made according to frontage." *Id.* § 17A–3–307(3)(b)(i) (emphasis added). The dispositive issue in this case is therefore whether the school district property was "to be assessed" within the meaning of 17A–3–307(3)(b)(i). We hold that it was not because such property is exempt from local assessments.

The law is clear that a municipality may not levy an assessment against school district property. Our State Constitution provides that "[t]he property of the state, *school districts,* and public libraries" are exempt from property taxes. Utah Const. art. XIII, § 2(2)(a) (emphasis added). Utah Code Ann. § 53A–3–408(1) also provides that "[r]eal and personal property held by a local school board is exempt from ... special taxation and from local assessments." Finally, the Municipal Improvement District Act itself provides that "a municipality *may not levy an assessment against* property owned by ... any ... *school district.*" Utah Code Ann. § 17A–3–315(1) (emphasis added). Thus the school district property in this case was exempt from assessment by the City.

■ The City nevertheless argues that the school district property was "to be assessed" within the meaning of section 17A–3–307(3)(b)(i) because the school district voluntarily agreed to an assessment by the City. It contends that Utah Code Ann. § 17A–3–315(1) expressly provides that "[a school district] is authorized to contract with the municipality for the making of such improvement and for the payment of the costs thereof to the municipality."

While we agree that a school district may contract or agree to pay its share of the costs of improvements in a SID, it does not necessarily follow that the school district is thereby subject to an assessment. The term "assessment" is a term of art and is expressly defined in the Utah Municipal Improvement Act as "*a special tax levied against property* within a special improvement district to pay all or a portion of the costs of making improvements in the district." Utah Code Ann. § 17A–3–303(1)(a) (emphasis added). This definition makes clear that an assessment is a tax, and it is commonly understood that the "[e]ssential characteristics of a tax are that it is *not a voluntary payment or donation,* but an enforced contribution, exacted pursuant to legislative authority." *Black's Law Dictionary* 1015 (6th ed.1990) (emphasis added). We therefore hold that the school district's voluntary agreement with the City to pay its share of the improvements was just that, a contract, and not an assessment. Accordingly, we conclude that the school district property was not property "to be assessed" within the meaning of section 17A–3–307(b)(i) and that the property owners opposing the creation of the SID therefore filed sufficient protests to defeat it.

## CONCLUSION

In conclusion, we hold that the front footage of the school district property was erroneously included in the calculation of the total number of protests needed to defeat the creation of the SID because such property was exempt from assessment by the City. Consequently, the protests filed by the January 13 deadline represented 53% of the assessable front footage within the SID and were sufficient to defeat its creation. We therefore reverse the trial court's order granting the City summary judgment and remand this case for the purpose of entering summary judgment in favor of Pappas. Reversed and remanded.

DURHAM, Associate C.J., and STEWART, ZIMMERMAN and RUSSON, JJ., concur in Chief Justice HOWE's opinion.