2000 UT 66

Edward **ESQUIVEL**, deceased, Norma Esquivel, Richard Esquivel, Angel Esquivel, Edica Esquivel, and Ofelia Herrera, Petitioners,

v.

**LABOR COMMISSION OF UTAH**, Redd Roofing & Construction Company, and CNA Insurance Company, Respondents.

No. 990250.

Supreme Court of Utah.

Aug. 15, 2000.

Robert B. Sykes, Ron J. Kramer, Salt Lake City, for petitioners.

Alan Hennebold, Salt Lake City, for Labor Commission.

Theodore E. Kanell, Robert C. Olsen, Stephen P. Horvat, Salt Lake City, for Redd Roofing and CNA Insurance.

David W. Parker, Salt Lake City, for amicus Utah Trial Lawyers Association.

ON CERTIORARI TO THE UTAH
COURT OF APPEALS

RUSSON, Associate Chief Justice:

¶ 1 On writ of certiorari, petitioners seek review of the Utah Court of Appeals' decision to affirm the Utah Labor Commission Appeals Board order. The appeals board held that a third-party judgment obtained by petitioners was to be entirely disbursed to offset the future workers' compensation obligations of Redd Roofing and Construction Company ("Redd Roofing") and CNA Insurance Company ("CNA"). *See Esquivel v. Labor Comm'n,* 1999 UT App 9, 973 P.2d 440. We reverse in part and affirm in part.

## BACKGROUND

¶ 2 Edward Esquivel was employed by Redd Roofing in 1993. On April 26, 1993, Esquivel sustained a fatal injury in an accident arising out of and in the course of his employment while working at the Freeport Center in Clearfield, Utah. While operating a roof sweeper, Esquivel fell from one roof onto and through another roof. He was rushed to LDS Hospital but died that night. Soon thereafter, Esquivel's heirs (the "Esquivels") filed for and received death benefits from Redd Roofing pursuant to the Utah Workers' Compensation Act. The benefits were paid by CNA, Redd Roofing's insurer.

¶ 3 Subsequently, the Esquivels filed a wrongful death suit against the Freeport Center. That claim was settled for $375,000 in March of 1994. As a result of the settlement, the Esquivels, Redd Roofing, and CNA entered into an agreement stipulating that the Esquivels reimburse CNA $8263.84 to satisfy CNA's lien for all workers' compensation death and dependency benefits accrued to that point. In addition, as a part of the agreement, CNA reduced benefit payments to the Esquivels from $341 per week to $205 per week for the benefit period remaining under the workers' compensation act. The $205 per week would also be the basis for determining all future workers' compensation for which the Esquivels might be entitled.[1]

¶ 4 In 1995, the Esquivels filed another third-party suit. This wrongful death suit was against the maker of the roof sweeper, Gravely International ("Gravely"). The case was tried, and the jury determined the total damages to be $814,029. Redd Roofing, Esquivel's employer, was apportioned 50% of the fault, Gravely was apportioned 25%, and Esquivel himself was apportioned 25% of the fault. However, pursuant to the Utah Liability Reform Act[2] and the Utah Workers' Compensation Act,[3] the Esquivels could not

---

1. This settlement is not at issue and is provided only for background information.

2. *See* Utah Code Ann. § 78–27–38(4)(a), (b) (Supp.1999) (providing that fault of employer and fault of person seeking recovery be used to accurately determine proportionate fault).

3. *See id.* § 34A–2–105 (Supp.1999) (providing that workers' compensation is exclusive remedy against employer).

recover for the apportionment of fault attributed to Esquivel himself or his employer. Therefore, the final judgment awarded to the Esquivels was $203,507.25. Attorney fees were $81,402.90 and costs were $53,596.38, leaving $68,507.97 to be disbursed. It is this disbursement that is at issue in the instant case.

¶ 5 Due to the judgment awarded to the Esquivels, CNA discontinued the $205 weekly workers' compensation payments as of April 1, 1996. Thereafter, the Esquivels filed an application for hearing before the Industrial Commission requesting review of CNA's termination of benefit payments. In response, Redd Roofing and CNA claimed that section 35-1-62 of the Utah Code provided that the judgment awarded to the Esquivels relieved CNA from paying further benefits. Redd Roofing and CNA contended that under the statute, CNA was entitled to reimbursement for payments made since the earlier settlement and CNA was further entitled to relief from paying any future benefits. The payments CNA had made since the earlier settlement totaled $21,320.

¶ 6 The Industrial Commission issued its findings of fact and conclusions of law on February 7, 1997. The commission accepted the Esquivels' formula for calculating the disbursement under section 35-1-62(5), concluding that the Esquivels were entitled to keep the entire $68,507.97, and that CNA was not entitled to any reimbursement or credit against future payments. Thus, CNA was ordered to continue making the weekly $205 payments to the Esquivels.

¶ 7 Redd Roofing and CNA moved to have the order reviewed, arguing that the $68,507.97 should be credited against the future workers' compensation payments owed by CNA to the Esquivels and that those obligations should be discounted to present value. Furthermore, CNA waived its claim to reimbursement for the $21,320 in benefits paid prior to April 1, 1996, on condition that the $68,507.97 be paid to offset future payments in accordance with the statute.

¶ 8 In July 1997, the Utah Legislature replaced the Industrial Commission with the Utah Labor Commission. This matter was then assigned to the Utah Labor Commission

Appeals Board for review. On January 14, 1998, the appeals board reversed the earlier decision of the commission and allowed CNA to apply the full $68,507.97 against its liability for future workers' compensation benefits. CNA did not have to resume benefit payments until the $68,507.97 had been fully offset. Moreover, CNA could use the present value amount of $83,000, using an 8% discount rate, as its liability for future benefits.

¶ 9 The Esquivels petitioned the Utah Court of Appeals to review the board's decision. The court of appeals affirmed the decision of the appeals board. This court then granted the Esquivels' petition for writ of certiorari to review the court of appeals' action.

¶ 10 The Esquivels allege four issues before this court: (1) that the court of appeals should have used a correction-of-error standard in reviewing the decision of the commission appeals board; (2) that the court of appeals erred in affirming the appeals board's interpretation of the statute for disbursement of proceeds from third-party tort actions; (3) that the court of appeals erred by deciding that the Esquivels had waived their right to challenge the appeals board's order allowing CNA to discount future workers' compensation benefits payable to the Esquivels; and (4) that the appeals board erroneously allowed CNA to discount its future workers' compensation benefits.

## STANDARD OF REVIEW

¶ 11 "When exercising our certiorari jurisdiction, we review the decision of the court of appeals, not of the [agency]." *Platts v. Parents Helping Parents*, 947 P.2d 658, 661 (Utah 1997). The court of appeals' decision is reviewed for correctness, and its conclusions of law are afforded no deference. *See Bear River Mut. Ins. Co. v. Wall*, 1999 UT 33, ¶ 4, 978 P.2d 460.

## ANALYSIS

### I. APPROPRIATE STANDARD OF REVIEW

¶ 12 The Esquivels argue that the court of appeals erroneously afforded deference to

the appeals board's decision. Therefore, we must first determine whether the court of appeals applied the appropriate standard of review to the agency's decision. *See Newspaper Agency Corp. v. Auditing Div.*, 938 P.2d 266, 267 (Utah 1997). In this case, the appellate court applied what it termed an intermediate standard of review whereby it upheld the appeals board's statutory interpretation absent a finding of unreasonableness. *See Esquivel v. Labor Comm'n*, 1999 UT App 9, ¶ 11, 973 P.2d 440.

¶ 13 However, "[m]atters of statutory construction are questions of law that are reviewed for correctness." *Platts v. Parents Helping Parents*, 947 P.2d 658, 661 (Utah 1997); *see also Jeffs v. Stubbs*, 970 P.2d 1234, 1240 (Utah 1998); *Pappas v. Richfield City*, 962 P.2d 63, 65 (Utah 1998); *Facer v. Allen*, 958 P.2d 919, 921 (Utah 1998). In addition, "[w]here the issue is a question of law, ... appellate review gives no deference to the trial judge's or agency's determination, because the appellate court has 'the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction.'" *Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997) (internal citation omitted).

■ ¶ 14 An exception to this general rule exists if the legislature has either explicitly or implicitly granted discretion to the agency. However, absent a grant of discretion, an agency's interpretation or application of statutory terms should be reviewed under the correction-of-error standard. *See Morton Int'l, Inc. v. Auditing Div.*, 814 P.2d 581, 588 (Utah 1991). Additionally, if the "legislative intent concerning the specific question at issue can be derived through traditional methods of statutory construction, the agency's interpretation will be granted no deference and the statute will be interpreted in accord with its legislative intent." *Id.* at 589.

¶ 15 In the case before us, the court of appeals determined that the appeals board had been granted broad discretion by Utah Code Ann. § 34A–1–301 (1997), which provides: "The commission has the duty and the full power, jurisdiction, and authority to determine the facts and apply the law in this

chapter." *Esquivel*, 1999 UT App at ¶ 11, 973 P.2d 440.

¶ 16 However, "an agency's statutory construction should only be given deference when there is a grant of discretion to the agency concerning the language in question, either expressly made in the statute or implied from the statutory language." *Morton*, 814 P.2d at 589; *see also Elk Lodges No. 719 & No. 2021 v. Department of Alcoholic Beverage Control*, 905 P.2d 1189, 1193 (Utah 1995) (noting that intermediate deference will be given if legislature has expressly or impliedly given discretion to apply or interpret *that* law but if no explicit grant of discretion by legislature, issues of statutory construction are reviewed for correctness); *Hales Sand & Gravel, Inc. v. Audit Div.*, 842 P.2d 887, 890 n. 3 (Utah 1992) (same); *Zissi v. State Tax Comm'n*, 842 P.2d 848, 853 n. 2 (Utah 1992) (same); Judge Norman H. Jackson, *Utah Standards of Appellate Review—Revised*, 12 Utah Bar J. 8, 46–47, 49 (1999).

■ ¶ 17 We have never previously viewed Utah Code Ann. § 34A–1–301 as a broad grant of discretion to the Labor Commission. In fact, we have, upon numerous occasions since this statute became effective July 1, 1997, reviewed commission decisions concerning questions of law under the correctness standard. *See, e.g., Vigos v. Mountainland Builders, Inc.*, 2000 UT 2, ¶ 7, 993 P.2d 207 (using correction-of-error standard to review Industrial Commission's interpretation of Utah Code Ann. § 35–1–99 on writ of certiorari to court of appeals); *Christensen v. Spanish Fork City*, 2000 UT 13, ¶ 6, 994 P.2d 1252 (companion case of *Vigos* that reviewed Labor Commission's interpretation of statute on certification from court of appeals); *Olsen v. Samuel McIntyre Inv. Co.*, 956 P.2d 257, 259 (Utah 1998) (reviewing Industrial Commission's statutory construction for correctness on writ of certiorari to court of appeals); *Brown & Root Indus. Serv. v. Industrial Comm'n*, 947 P.2d 671, 675 (Utah 1997) (using correction-of-error standard to review Industrial Commission's statutory construction on writ of certiorari to court of appeals).

■ ¶ 18 Neither the Labor Commission Appeals Board nor the court of appeals has established that section 34A–1–301 should

now be interpreted differently. We are not convinced, and do not conclude, that section 34A–1–301 provides a general grant of discretion to the Labor Commission for statutory interpretation.

¶ 19 Accordingly, the specific issue presented in the case before us, disbursement of a third-party recovery, can be determined from the terms of the statute using traditional methods of statutory construction. Furthermore, the statutory terms of section 34A–2–106(5) are of a specific nature and do not connote a general grant of discretion. Therefore, the court of appeals erred in granting deference to the Labor Commission Appeals Board for interpretation of the statute.

## II. STATUTORY CONSTRUCTION

¶ 20 On appeal, the parties present two opposing interpretations of Utah Code Ann. § 34A–2–106. The Esquivels argue that the apportionment of attorney fees and costs should be applied to the recovery first. Additionally, they encourage us to adopt a formula that uses the net recovery rather than the gross recovery as the basis for determining the insurance carrier's apportionment of expenses.

■ ¶ 21 Alternatively, Redd Roofing, CNA, and the Labor Commission argue that the insurer should have priority, and therefore, the balance of the recovery should be completely used to offset CNA's future benefit obligations. Our primary goal in interpreting statutes, however, is to give effect to the legislature's intent based on the purpose of the statute. See Evans v. State, 963 P.2d 177, 184 (Utah 1998). We therefore look first to the plain language of section 34A–2–106. See id.

¶ 22 Disbursement of proceeds recovered in a third-party tort action due to injuries or death arising from a work-related accident is controlled by section 34A–2–106(5)[4] of the Utah Code. This section provides in pertinent part:

(5) If any recovery is obtained against a third person, it shall be disbursed in accordance with Subsections (5)(a) through (c).

(a) The reasonable expense of the action, including attorneys' fees, shall be paid and charged proportionately against the parties as their interests may appear. Any fee chargeable to the employer or carrier is to be a credit upon any fee payable by the injured employee or, in the case of death, by the dependents, for any recovery had against the third party.

. . . .

(c) The balance shall be paid to the injured employee, or the employee's heirs in case of death, to be applied to reduce or satisfy in full any obligation thereafter accruing against the person liable for compensation.

Utah Code Ann. § 34A–2–106(5) (1997).

■■ ¶ 23 Double recovery for injuries or death sustained in conjunction with an accident covered by workers' compensation is not permitted. See Worthen v. Shurtleff & Andrews, Inc., 19 Utah 2d 80, 426 P.2d 223, 225 (1967); see also Allstate Ins. Co. v. Bliss, 725 P.2d 1330, 1334 (Utah 1986); 82 Am.Jur.2d Workers' Compensation § 110 (1992). Therefore, a third-party recovery must reim-

---

4. The accident occurred in 1993, and at that time, section 35–1–62(5) of the Utah Code read somewhat differently than it did after it was amended in 1994. However, the award from Gravely was not ordered until April 1996. Nevertheless, Redd Roofing and CNA argued in their reply to the Esquivels' opposition to the motion for review before the Industrial Commission that because CNA was not seeking reimbursement, there was no need to determine which version of the statute governed. "Either way, the provisions regarding the right of the insurer to an offset of the balance are the same." Because it is only the section dealing with reimbursement that differs between the pre- and post-amend-ment statute, we are able to apply the post–1994 amended version in this case. Therefore, we do not need to determine at this time whether the 1994 amendment provides substantive rights which must not be applied to a claim arising out of a prior death.

Additionally, the 1994 amendment caused section 35–1–62(5) to read almost identically to the current section 34A–2–106(5). In fact, as of July 1, 1997, section 35–1–62(5) was renumbered to section 34A–2–106(5) with only stylistic and statutory reference changes. Therefore, for simplicity, we can apply Utah Code Ann. § 34A–2–106(5) to the recovery from Gravely for the narrow purpose of this decision.

burse the employer or insurer for workers' compensation sums already paid as well as offset for future liability of sums owed. *See Worthen*, 426 P.2d at 225. However, the employer or insurer must *first* bear a proportionate share of the expenses for obtaining the recovery. *See id.; see also Prettyman v. State Dep't of Fin.*, 27 Utah 2d 333, 496 P.2d 89, 91 (1972). Section 34A–2–106(5) ensures this equitable arrangement.

¶ 24 We will now apply the statute as it reads to show how each step should have been applied in the instant case.

¶ 25 The plain language of the statute requires that if any recovery is obtained, it must be disbursed in accordance with subsection (5)(a) through (c). *See* Utah Code Ann. § 34A–2–106(5). That language indicates that it is the gross recovery being disbursed because no deductions have been allowed to this point. Expenses have not yet been paid or accounted for. Therefore, we begin with the gross recovery of $203,507.25.

¶ 26 Next, section 34A–2–106(5)(a) requires that "[t]he reasonable expense of the action, including attorneys' fees, shall be paid and charged proportionately against the parties as their interests may appear." Because CNA has waived its interest in past payments of $21,320, this figure should not be included in CNA's total interest. Instead, CNA's total interest should be based only on its discounted future liability.[5] Therefore, CNA's interest is its discounted future liability divided by the total recovery of 203,507.25.[6]

¶ 27 The attorney fees are $81,402.90, and the costs are $53,596.38. Therefore, the expenses are $134,999.28. If we assume that the expenses are reasonable, then the statute requires CNA to pay the percentage of CNA's interest of $134,999.28.

¶ 28 The statute next requires that "[a]ny fee chargeable to [CNA] . . . be a credit upon any fee payable by [the Esquivels] for any recovery had against [Gravely]." *Id.* § 34A–2–106(5)(a). Therefore, the fee chargeable to CNA[7] is to be a credit upon the $134,999.28 fee payable by the Esquivels for the recovery of $203,507.25 had against Gravely.

¶ 29 The Esquivels paid the entire $134,999.28 for expenses out of the $203,507.25 judgment, leaving $68,507.97. The Esquivels are now entitled to reimbursement for CNA's proportionate share of reasonable expenses. Because CNA has not paid its proportionate share at this point, there is a credit owed to the Esquivels.[8] This results in a total balance—part in the form of cash and part in the form of a credit owed.

¶ 30 Next, CNA is entitled to reimbursement for payments of $21,320 already made. However, CNA waived any right to this reimbursement, and therefore, we skip step (b)[9] and move on to step (c).

¶ 31 Step (c) provides that "[t]he balance shall be paid to [the Esquivels] to be applied to reduce or satisfy in full any obligation thereafter accruing against [CNA]." *Id.* § 34A–2–106(5)(c). Therefore, the total balance consisting of $68,507.97 (which was left after the Esquivels paid all the expenses) plus the credit CNA owes the Esquivels for its share of expenses[10] should be paid to the Esquivels. However, because a double recovery is not permitted, the Esquivels must apply this total balance to reduce or satisfy CNA's future obligation.

---

5. See part III for a discussion of the appeals board's decision to apply present value discounting to CNA's liability for future benefits. As noted by the appeals board, CNA's future liability is for $205 per week from April 1, 1996, until January 5, 2008 (when the youngest child turns eighteen). This is the figure to which the commission should apply present value discounting, which can then be used to determine CNA's total interest.

6. (CNA's interest) = (CNA's discounted future liability) ÷ $203,507.25 × 100.

7. (CNA's interest) × $134,999.28.

8. (CNA's interest) × $134,999.28.

9. Step (b) of section 34A–2–106(5) provides for reimbursement to the person liable for the compensation payments for past payments already made to the beneficiaries. The proportionate share of costs and attorney fees are accounted for as well as consideration for fault of the employer.

10. (CNA's interest) × $134,999.28.

¶ 32 Therefore, if the total balance is greater than CNA's discounted future liability, then CNA's discounted future liability is totally offset and CNA has no further obligation to the Esquivels. However, if the total balance is not greater than CNA's discounted future liability, CNA must resume payments once the amount of the total balance has been offset and then continue until such time as the youngest child reaches eighteen (January 5, 2008).

### III.  WAIVER OF RIGHT TO CHALLENGE DISCOUNT

¶ 33 In their motion for review of the Industrial Commission's order, Redd Roofing and CNA requested that their liability for future payments to the Esquivels be discounted to present value according to commission regulations. The Esquivels made no objection to this request in their response to the motion for review of the commission's order. The appeals board granted the request made by Redd Roofing and CNA and allowed a present value discount rate of 8% to be applied to the liability for future benefits. Therefore, the appeals board determined that CNA's future liability should be $83,000.

¶ 34 The Esquivels did not raise an objection to the request made by Redd Roofing and CNA to discount the liability for future benefits until the matter was brought before the Utah Court of Appeals on review. *See Esquivel v. Labor Comm'n,* 1999 UT App 9, ¶¶ 21–23, 973 P.2d 440. The general rule is that objections or questions not raised or urged in the agency proceeding are considered waived and will not be considered by a court on review. *See Brown & Root Indus. Serv. v. Industrial Comm'n,* 947 P.2d 671, 677 (Utah 1997); *Alvin G. Rhodes Pump Sales v. Industrial Comm'n,* 681 P.2d 1244, 1249 (Utah 1984); *see also* 2 Am.Jur.2d *Administrative Law* § 578 (1994); 73A C.J.S. *Public Administrative Law* § 191 (1983). There are some exceptions to this rule, but they do not apply to this case. *See* 73A C.J.S. *Public Administrative Law* § 191. Therefore, we affirm the court of appeals' decision that the Esquivels waived their right to appeal the issue of present value discounting.

¶ 35 Because the Esquivels have waived their right to appeal the appeals board's decision concerning discounting, we do not reach the Esquivels' argument that the appeals board abused its discretion in allowing the discount.

### CONCLUSION

¶ 36 The court of appeals erred in deferring to the Labor Commission Appeals Board's interpretation of the statute. In light of the foregoing, we hold that the appeals board did not correctly interpret the statute. We therefore reverse the court of appeals and remand to the Utah Labor Commission for proceedings consistent with this opinion. In addition, we affirm the court of appeals' decision that the Esquivels waived their right to appeal the appeals board's decision concerning discounting.

¶ 37 Chief Justice HOWE, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Associate Chief Justice RUSSON's opinion.