2006 UT App 179

Stephen E. STRATE, Administrator of
the Estate of Walther Strate,
Deceased, Petitioner,

v.

LABOR COMMISSION; Employers' Re-
insurance Fund; and Steve Strate
Crane Service, Inc., Respondents.

No. 20050383–CA.

Court of Appeals of Utah.

May 4, 2006.

Virginius Dabney, Dabney & Dabney, St. George, for Petitioner.

Alan L. Hennebold, Edwin C. Barnes, and Wendy B. Crowther, Clyde Snow Sessions & Swenson, Salt Lake City, for Respondents.

Before GREENWOOD, Associate P.J., McHUGH and ORME, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Stephen E. Strate, administrator of the estate of Walther Strate (Petitioner), appeals the Utah Labor Commission's (the Commission) denial of an injured worker's claim for permanent total disability benefits.[1] On appeal, Petitioner first claims that the findings of the Commission were inadequate and thus arbitrary and capricious as a matter of law. He also argues that Respondents were barred by res judicata from raising the issue of legal causation. We affirm.

## BACKGROUND

¶ 2 In 1978, Petitioner suffered a compensable industrial injury when he was struck on the back and head by the boom of a concrete pumping truck while on a job site. He was then working for his own firm, Strate Western Concrete Pumping (Strate Western). Following the accident, Petitioner received temporary total disability benefits and a twenty percent permanent partial disability award. After a period of recovery, he returned to work without significant limitation.

¶ 3 Petitioner subsequently lost Strate Western to his ex-wife. In 1985, he went to work for his brother's business, Steve Strate Crane Services. At that time, Strate Western and Steve Strate Crane Services shared warehouse space in American Fork, Utah.

¶ 4 In 1985, Petitioner suffered a second injury when his ex-wife's boyfriend hit him in the head with a metal pipe. The assailant was apparently lying in wait for Petitioner in a storeroom at the warehouse shared by the two companies. Petitioner believed the assault was precipitated by the assailant's relationship with Petitioner's ex-wife. The assailant was not an employee of Steve Strate Crane Services or Strate Western.

¶ 5 Petitioner subsequently received a $75,000 settlement from his assailant for the attack. Moreover, Petitioner's employer, Steve Strate Crane Services, filed an Employer's Report of Injury on his behalf with the Utah State Insurance Fund (now referred to as the Workers' Compensation Fund) (the Fund). The Fund began paying benefits to Petitioner but denied further payment upon discovering the altercation resulting in Petitioner's injury may have arisen out of personal matters, rather than an industrial accident.

¶ 6 In 1986, Petitioner filed an Application for Hearing, seeking a continuation of benefits. Petitioner and the State Insurance Fund thereafter settled Petitioner's claim. Under the terms of the 1986 settlement (1986 Settlement), the Fund agreed to pay benefits to Petitioner for all injuries and disabilities

---

1. In addition to the Utah Labor Commission, the other Respondents in this matter are Steve Strate Crane Services, Inc. and the Employers' Reinsurance Fund.

arising out of the 1985 injury "as if that injury arose out of [Petitioner's] ... 1978 accident." Once the settlement agreement was approved by an Administrative Law Judge (ALJ), copies were mailed to the parties. A copy of the agreement was also mailed to the Second Injury Fund (now referred to as the Employers' Reinsurance Fund) (ERF), which was not a party to the proceedings.

¶ 7 The following year, in 1987, Petitioner was admitted to a hospital for follow-up diagnostic tests. His case was referred to a medical panel, which concluded that his condition had stabilized on August 1, 1986. The panel also concluded that Petitioner had an impairment of twenty percent from psychiatric causes "due to the industrial accident." An ALJ subsequently adopted the medical panel's findings and ordered that Petitioner be paid permanent partial benefits (the 1988 Decision).

¶ 8 In May 1997, Petitioner filed an Application for Hearing seeking Permanent Total Disability benefits. On August 19, 1997, Petitioner died of hepatic failure and chronic liver cirrhosis.[2]

¶ 9 Thereafter, the ALJ ruled as a matter of law that Petitioner's latest claim was barred because Petitioner died before permanent partial disability benefits vested. Petitioner appealed and the dismissal was affirmed. Reconsideration of the order was granted and the case remanded for a hearing on the merits due to the passage of Senate Bill 126 during the 2003 session of the Utah Legislature.[3]

¶ 10 In October 2003, the parties stipulated as follows:

The petitioner was permanently totally disabled as the result of the June 1985 injury[,] and it is the medical cause of that disability. In light of his death, a referral to vocational rehabilitation is moot. The petitioner received two third party settlements as the result of the July 1978 and June 1985 injuries. On June 5, 1985, the petitioner was assaulted by ... the petitioner's ex-wife's boyfriend, who was not employed by Strate Crane Service. The assault took place while the petitioner was at work and on his work site. The petitioner was the owner of Strate Concrete Pumping but at the time of the injury had lost control of the company to his ex-wife.

¶ 11 In an October 2003 hearing, the ALJ heard arguments and took testimony concerning the circumstances of the assault on Petitioner. The ALJ ultimately concluded that Petitioner's 1985 injury was unrelated to work, stating that "[t]he workplace added nothing to the risk of injury other than being the location of an assault arising out of a personal dispute." Thereafter, Petitioner filed a motion for review. Petitioner's motion was denied by the Commission, which agreed with the ALJ that Petitioner had failed to meet his burden of proof by establishing that the 1985 assault "arose out of or in the course of" Petitioner's employment for Steve Strate Crane Services.

¶ 12 This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

██ ¶ 13 On appeal, Petitioner first contends that the findings of the Commission in denying permanent total disability benefits were inadequate and thus arbitrary and capricious as a matter of law. The adequacy of

---

2. After Petitioner's death, the parties remained involved in litigation not relevant to the outcome of the instant case. Accordingly, we omit the details here.

3. Senate Bill 126, enacted into law in 2003, adds a new section 34A-2-423 to the Workers' Compensation Act, which provides:

The personal representative of the estate of an employee may adjudicate an employee's claim for compensation filed under this chapter if in accordance with this chapter, the employee files a claim:

(a) before the employee dies; and

(b) for compensation for an industrial accident or occupational disease for which compensation is payable under this chapter or Chapter 3, Utah Occupational Disease Act.

Utah Code Ann. § 34A-2-423(2)(a)-(b) (2005).

Petitioner argues that this recent change in the permanent total disability statute provides that benefits do not abate upon the death of the injured worker and that section 34A-2-423(2) should be applied retroactively. ERF disagrees. Because we decide this case on other grounds, we do not address this issue.

findings is a question of law. *See Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997). We review the Commission's interpretations of law under a correction-of-error standard. *See Tax Comm'n v. Industrial Comm'n*, 685 P.2d 1051, 1052 (Utah 1984). However, scope-of-employment decisions are highly fact-dependent. *See Drake*, 939 P.2d at 182. We review the Commission's factual findings under a deferential standard. *See Tax Comm'n v. Industrial Comm'n*, 685 P.2d at 1052 ("In reviewing questions of fact, we defer to a great degree to the Commission's findings and reverse only where they are without foundation in the evidence.").

■ ¶ 14 Petitioner also argues that the 1986 determination of legal causation in this matter was res judicata and therefore ERF was barred from raising it later in the proceedings. "The 'determination of whether res judicata bars an action presents a question of law[,]' which we review for correctness." *Massey v. Board of Trs. of the Ogden Area Cmty. Action Comm.*, 2004 UT App 27,¶ 5, 86 P.3d 120 (alteration in original)(quoting *Macris & Assocs. v. Neways, Inc.*, 2000 UT 93,¶ 17, 16 P.3d 1214).

## ANALYSIS

### I. Adequacy of the Findings

■ ¶ 15 Petitioner argues that the Commission's findings in denying permanent total disability benefits were inadequate and thus arbitrary and capricious as a matter of law.

■ ¶ 16 In *Nyrehn v. Industrial Commission*, this court announced the standard for administrative agency fact-finding:

> In order for us to meaningfully review the findings of the Commission, the findings must be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.... The failure of an agency to make adequate findings of fact on material issues renders its findings arbitrary and capricious unless the evidence is clear, uncontroverted and capable of only one conclusion.

800 P.2d 330, 335 (Utah Ct.App.1990) (quotations and citations omitted); *accord Utahns*

*for Better Dental Health–Davis, Inc. v. Davis County Comm'n*, 2005 UT App 347,¶ 7, 121 P.3d 39 (stating similar standard for findings regarding award of attorney fees).

¶ 17 Petitioner maintains that the Commission did not adopt the ALJ's findings, but entered only brief findings of fact and then made "sweeping conclusion[s]." For this reason, Petitioner argues that the Commission's 2005 Order Denying Motion for Review was inadequate as a matter of law.

¶ 18 To establish that he was entitled to benefits under then applicable Utah Code section 35–1–45, Petitioner was required to show that his injury arose "out of or in the course of his employment" with Steve Strate Crane Services. *See* Utah Code Ann. § 35–1–45 (1985). Petitioner relied exclusively on three documents that allegedly showed that his injuries arising from the 1985 assault were work-related. The Commission reviewed each of the documents and determined that none "[were] sufficient for that purpose."

¶ 19 Before the Commission, Petitioner first relied on the 1986 Settlement signed by the Fund and Petitioner and approved by the Commission. Concerning the 1986 Settlement, the Commission noted that the parties had agreed to treat the 1985 injury as a natural consequence of Petitioner's 1978 accident, rather than as a new work injury. Accordingly, the Commission stated that the 1986 Settlement did not support Petitioner's assertion that the 1985 injury was itself a compensable injury.

¶ 20 Likewise, the Commission was unpersuaded by Petitioner's reliance on the ALJ's 1988 Decision, which references the 1986 Settlement and awards various benefits to Petitioner. The Commission noted that the employer/defendant in the 1988 Decision was Strate Western, the Petitioner's employer at the time of the 1978 incident, and not Steve Strate Crane Services, the Petitioner's employer at the time of the 1985 incident. The Commission therefore concluded that this reference to the industrial accident was "entirely consistent" with the terms of the 1986 Settlement between Petitioner and the Fund, which assumed for purposes of the settlement that the 1985 incident was compensable

as a consequence of the 1978 accident, and not as an independent event connected to his employment by Steve Strate Crane Services.[4]

¶ 21 Contrary to Petitioner's argument that the Commission's findings were "shockingly brief" and therefore inadequate, the record reveals that the Commission's findings were "sufficiently detailed and include[d] enough subsidiary facts to disclose the steps by which the ultimate conclusion on [the] factual issue was reached." *Utahns for Better Dental Health–Davis, Inc. v. Davis County Comm'n,* 2005 UT App 347, ¶ 7, 121 P.3d 39 (quotations and citations omitted). Accordingly, we conclude that the Commission comported with the supreme court's requirement that such findings be "complete, accurate, and consistent." *Milne Truck Lines, Inc. v. Public Serv. Comm'n,* 720 P.2d 1373, 1378 (Utah 1986). As a result, Petitioner's argument on this issue fails.

## II. Legal Causation

¶ 22 Petitioner next argues that Respondent ERF is barred from disputing the compensability of Petitioner's injuries because legal causation had previously been determined in this matter and was therefore res judicata. Petitioner maintains that the 1986 Settlement constituted a binding determination that legal causation existed as to the compensability of the 1985 injury. Petitioner thus argues that Respondent ERF was barred from disputing legal causation after the 1986 Settlement. We do not agree.

¶ 23 "The doctrine of res judicata serves the important policy of preventing previously litigated issues from being relitigated. Res judicata encompasses two distinct doctrines: claim preclusion and issue preclusion." *Youren v. Tintic Sch. Dist.,* 2004 UT App 33, ¶ 2, 86 P.3d 771 (quoting *Miller v. USAA Cas. Ins. Co.,* 2002 UT 6, ¶ 57, 44 P.3d 663), *cert. denied,* 94 P.3d 929 (Utah 2004). "Claim preclusion will bar [Respondent ERF's] . . . cause of action if three elements are satisfied." *Id.*

¶ 24 In the instant case, Petitioner's argument fails because Respondent ERF was neither a party to nor a signatory of the 1986 Settlement. *See id.* (explaining that the first element required to establish res judicata is that "both cases . . . involve the same parties or their privies." (citation omitted)). Petitioner and the Fund entered into the 1986 Settlement to settle Petitioner's claim for permanent partial workers' compensation benefits for his 1985 injury. It was not until 1997 that Petitioner filed a claim for permanent total disability for his 1985 injury. Under the governing statute in effect at the time of the 1986 Settlement, ERF had liability for benefits in cases resulting in permanent and total disability. *See* Utah Code Ann. § 35–1–69 (1983) (explaining that Utah Code section 35–1–69 applies to employees who have "incurred a permanent incapacity"). Because Petitioner's 1985 claim dealt only with permanent partial disability, ERF did not face even potential liability for the claim. Moreover, contrary to Petitioner's argument, simply mailing ERF a copy of the 1986 Settlement did not mean ERF was a party to the agreement. Therefore, ERF is not bound by the 1986 Settlement.

¶ 25 Petitioner's argument that legal and medical causation have been established in this case fails for a similar reason. As ERF notes, the 1986 Settlement did not stipulate that Petitioner's 1985 injury arose out of his employment. Instead, under that settlement, the parties agreed only to treat and pay benefits for the 1985 permanent partial disability claim *as if* the injury arose from Petitioner's 1978 industrial accident. By its explicit terms, the 1986 Settlement was not intended to resolve questions concerning the nature of Petitioner's 1985 injuries. As a result, the 1986 Settlement is not binding on issues of permanent total disability.

¶ 26 Petitioner additionally urges that we find in his favor because the Workers' Compensation Act should be liberally construed to resolve all doubts in favor of the injured worker. This argument is unavailing because the record supports the con-

4. The Commission was also unpersuaded by Petitioner's reference to the provisions of a 1997 stipulation, which was withdrawn by the agreement of all parties in 2002 and therefore had no effect.

clusion that the 1985 assault on Petitioner arose as a result of a personal dispute between Petitioner and his assailant, and that the only workplace connection was a coincidence of location. The liberal construction doctrine requires only that we resolve any *reasonable* doubts concerning the right to compensation in favor of an injured party. *See Heaton v. Second Injury Fund,* 796 P.2d 676, 679 (Utah 1990). In this case, the evidence obviates any reasonable doubt about whether Petitioner's injuries were work-related. Hence, we need not consider this argument further.[5]

¶ 27 We conclude that the Commission correctly determined that Respondent ERF was not barred from disputing the compensability of Petitioner's injuries. Petitioner's argument on this issue fails.

## CONCLUSION

¶ 28 In sum, we conclude that the Commission's findings were sufficiently detailed to allow us to determine how the Commission reached its determination that Petitioner failed to meet his burden of showing that his 1985 injury was work-related. We further conclude that Respondent ERF is not bound by the 1986 Settlement because ERF was not a party to nor a signatory of that agreement. Accordingly, we affirm.

¶ 29 I CONCUR: CAROLYN B. McHUGH, Judge.

¶ 30 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.

---

**5.** In addition, Petitioner alleges that the destruction of a taped 1987 hearing concerning Petitioner's 1985 claim for permanent partial disability was a "manifest injustice." However, under Utah Code section 34A–2–420, "records pertaining to cases that have been closed and inactive for ten years, other than cases of total permanent disability or cases in which a claim has been filed as in section 34A–2–417, may be destroyed at the discretion of the commission." Utah Code Ann. § 34A–2–420(2) (2005). There is nothing in the record to support Petitioner's allegation that the Commission failed to comport with the relevant requirements of section 34A–2–420(2). *See id.* Petitioner did not bring a claim for permanent total disability benefits until 1997. Moreover, Petitioner waited some seventeen years beyond the hearing date and six years beyond the statutory retention date to request the taped hearing. Hence, this argument is unavailing.