2007 UT App 305

**AMERITECH LIBRARY SERVICES (DYNIX) and/or American Manufacturing Mutual/Kemper, Petitioners,**

v.

**LABOR COMMISSION and Tamara Edmonds, Respondents.**

No. 20060870–CA.

Court of Appeals of Utah.

Sept. 20, 2007.

Joseph C. Alamilla and Theodore E. Kanell, Salt Lake City, for Petitioners.

Phillip B. Shell, Murray, and Alan L. Hennebold, Salt Lake City, for Respondents.

Before BENCH, P.J., McHUGH and THORNE, JJ.

OPINION

McHUGH, Judge:

¶ 1 Ameritech Library Services and American Manufacturing Mutual/Kemper (collectively Ameritech) petition for review of the Utah Labor Commission's (the Commission) order requiring that they pay 100% of Tamara Edmonds's medical expenses related to treatment of her carpal tunnel syndrome. Ameritech argues that the Appeals Board of the Commission (the Appeals Board) erred when it failed to properly apply Utah Code section 34A–3–110, *see* Utah Code Ann. § 34A–3–110 (2005), to apportion medical expenses based on the causal contribution of industrial factors to Edmonds's occupational disease. We affirm.

## BACKGROUND

¶ 2 Ameritech Library Services employed Edmonds as a project coordinator and administrative assistant from 1991 until 1999. Edmonds's duties included scheduling and completing purchase orders for all equipment, entering data, installing hardware, and performing other miscellaneous tasks necessary to complete projects.[1] In 1992, Edmonds first noticed intermittent pain in her wrists. The pain became constant in the fall of 1993, and Edmonds sought medical treatment in January 1994. Treatment for her pain continued over the course of the next several years. She terminated her employment in 1999. By that time, her symptoms included bilateral pain and numbness in the fingers, hands, wrists, arms, shoulders, neck, and head. Despite Edmonds ending her employment with Ameritech, the pain continued.

¶ 3 In September 2002, Edmonds filed an Application for Hearing with the Commission seeking further coverage for carpal tunnel syndrome, which she attributed to the repetitive trauma to her hands and arms from excessive keyboard use and other job activities with Ameritech. The Commission appointed a medical panel to evaluate the conflicting medical aspects of Edmonds's claim. The panel opined that Edmonds's work activities acted as a 10% aggravation of the 90% non-industrial risk factors that caused her carpal tunnel syndrome. The Administrative Law Judge (ALJ) concluded that "10% of the cause of [Edmonds's] carpal tunnel symptoms is related to her work exposure throughout her period of employment with [Ameritech]."

¶ 4 Edmonds filed a motion for review with the Appeals Board arguing that the ALJ erred in apportioning medical expenses pursuant to section 34A–3–110, see id., which resulted in the determination that Ameritech was liable for only 10% of Edmonds's medical expenses. The Appeals Board affirmed the ALJ's finding that Edmonds's carpal tunnel syndrome had a 10% causal connection to industrial factors, but reversed the ALJ's determination that Ameritech was liable for only 10% of Edmonds's medical expenses.

Instead, the Appeals Board concluded that apportionment under section 34A–3–110, see id., was not applicable to medical expenses and that Ameritech, therefore, was liable for 100% of those expenses. Ameritech seeks review of the Appeals Board's decision.

## ISSUE AND STANDARD OF REVIEW

¶ 5 Ameritech argues that the Appeals Board incorrectly interpreted "compensation" as used in Utah Code section 34A–3–110, see id., when it concluded that medical expenses were not included in the term and were therefore not apportionable under the statute. "[A]n agency's interpretation or application of statutory terms should be reviewed under the correction-of-error standard." Esquivel v. Labor Comm'n, 2000 UT 66, ¶ 14, 7 P.3d 777; see also Strate v. Labor Comm'n, 2006 UT App 179, ¶ 13, 136 P.3d 1273 ("We review the [Labor] Commission's interpretations of law under a correction-of-error standard."). "Additionally, if the legislative intent concerning the specific question at issue can be derived through traditional methods of statutory construction, the agency's interpretation will be granted no deference and the statute will be interpreted in accord with its legislative intent." Esquivel, 2000 UT 66 at ¶ 14, 7 P.3d 777 (internal quotation marks omitted).

## ANALYSIS

¶ 6 Ameritech argues that the Appeals Board erred when it determined that apportionment of Edmonds's medical expenses was not appropriate under section 34A–3–110 of the Utah Occupational Disease Act (UODA), see Utah Code Ann. §§ 34A–3–101 to –112 (2005 & Supp.2007). Section 34A–3–110 states in relevant part:

The compensation payable under this chapter shall be reduced and limited to the proportion of the compensation that would be payable if the occupational disease were the sole cause of disability or death, as the occupational disease as a causative factor bears to all the causes of the disability or

---

1. Eventually, Edmonds accepted a position as an inside sales representative. However, most of her duties remained the same, requiring constant desk and telephone work.

death when the occupational disease, or any part of the disease:

. . . .

(3) is aggravated by any other disease or infirmity not itself compensable; or

(4) when disability or death from any other cause not itself compensable is aggravated, prolonged, accelerated, or in any way contributed to by an occupational disease.

*Id.* § 34A–3–110 (2005).

¶ 7 Thus, the narrow question presented by this case is whether the term compensation under section 34A–3–110 of the UODA, *see id.*, includes payments for medical expenses. If it does, then Edmonds's claim for future medical expenses should be apportioned, requiring Ameritech to pay only that share of the medical expenses attributable to the industrial cause of Edmonds's disease— here, 10%. If compensation does not include payments for medical expenses, then apportionment under section 34A–3–110 is inapplicable and Edmonds is entitled to recover all medical expenses incurred in the treatment of her disease regardless of the percentage attributable to an industrial cause.

¶ 8 In support of its contention that the term compensation, as used in section 34A–3–110, includes payments for medical expenses, Ameritech relies on section 34A–2–102(3) of the Workers' Compensation Act (WCA), *see id.* §§ 34A–2–101 to –905 (2005 & Supp.2007), which defines "[c]ompensation" to "mean[ ] the payments and benefits provided for in this chapter[, WCA,] or Chapter 3, [UODA]," *id.* § 34A–2–102(3) (2005). Ameritech reasons that medical expenses are both a payment and a benefit for Edmonds's industrial disease.

¶ 9 Between 1979 and 1982, however, the Utah Supreme Court twice addressed whether the term compensation as used in the WCA included payments for medical expenses. In the first case, *Kennecott Copper Corp. v. Industrial Commission*, 597 P.2d 875 (Utah 1979), the court held that, under the WCA, the term compensation did not include payments for medical or hospital expenses. *See id.* at 877 ("[T]here is a distinct difference between 'compensation' which is paid for an injury in lieu of wages which otherwise would have been earned, and the adjunctive award of medical and hospital expenses for treating the injury."). The supreme court reached this conclusion without specifically referencing the definition of compensation in the WCA, but instead relied upon two provisions of the WCA, Utah Code sections 35–1–45 [2] and 35–1–81.[3] *See id.* The *Kennecott* court determined that these two sections "treat[ed] medicals as something different from the compensation in lieu of wages, and that it therefore" followed that medical expenses are not compensation within the meaning of the WCA. *Id.*

¶ 10 In 1982, the supreme court again considered the question of whether compensation, as defined by the WCA, included medical expenses. In *Christensen v. Industrial Commission*, 642 P.2d 755 (Utah 1982), the petitioners made an argument identical to that asserted here by Ameritech. Relying on a prior version of section 34A–2–102(3), which defined compensation to "mean the payments and benefits provided for in this title," Utah Code Ann. § 35–1–44(6) (1974) (current version at *id.* § 34A–2–102(3) (2005)),[4] the petitioners argued that medical

**2.** Section 35–1–45 stated in relevant part:
> Every employee ... who is injured ... by accident arising out of or in the course of his employment ... shall be paid, such compensation for loss sustained on account of such injury or death, and such amount for medical, nurse and hospital services and medicines, and, in case of death, such amount of funeral expenses, as is herein provided.

Utah Code Ann. § 35–1–45 (1974) (current version at *id.* § 34A–2–401 (2005)).

**3.** Section 35–1–81 provided in relevant part:
> In addition to the compensation provided for in this title the employer or the insurance

carrier shall also be required to pay such reasonable sum for medical, nurse and hospital services, and for medicines ... as may be necessary to treat the patient....

*Id.* § 35–1–81 (Supp.1979) (current version at *id.* § 34A–2–418 (2005)).

**4.** At the time the Utah Supreme Court decided *Christensen v. Industrial Commission*, 642 P.2d 755 (Utah 1982), the definition of compensation for purposes of the Workers' Compensation Act was found in section 35–1–44(6). *See* Utah Code Ann. § 35–1–44(6) (1974) (amended and renumbered at *id.* § 34A–2–102(3) (2005)). Since that time, the legislature has amended and renumber-

expenses were both a payment and a benefit under the WCA. *See Christensen,* 642 P.2d at 756.

¶ 11 The *Christensen* court disagreed. Reaffirming *Kennecott,* the supreme court held that despite the broad definition of compensation in the WCA, the term did not include medical expenses. *See id.* at 757. The court reasoned that because it had previously determined that medical expenses were outside the definition of compensation, and because the Utah Legislature had not amended or changed the two sections of the Utah Code relied upon for that decision—sections 35–1–45 and 35–1–81—that the legislature must have ratified, as consistent with its own intent, the definition of compensation announced in *Kennecott. See id.* at 756–57.

¶ 12 Since the Utah Supreme Court decided *Kennecott* and *Christensen,* the Utah Legislature has left the statutes relied upon for those decisions largely unchanged. Although section 35–1–45 has been renumbered twice and subdivided once since *Kennecott,*[5] it remains substantively similar to the previous version. *Compare* Utah Code Ann. § 34A–2–401 (2005),[6] *with id.* § 35–1–45 (1974) (amended and renumbered). Furthermore, the legislature has left intact over the last twenty-five years the language of section 35–1–81 relied upon by the *Kennecott* court. *See id.* § 35–1–81 (Supp.1979) (amended and renumbered); *Kennecott,* 597 P.2d at 877. Indeed, it has done so while amending other portions of section 35–1–81 to specifically refer to the UODA. *See* Act of Mar. 4, 1997, ch. 375, sec. 126, § 34A–2–418, 1997 Utah Laws 1438, 1498 (renumbering section

35A–3–418 as 34A–2–418 and amending to add a reference to UODA). In its current form the section states:

(1) *In addition to the compensation provided in this chapter or Chapter 3, Utah Occupational Disease Act,* the employer or the insurance carrier shall pay reasonable sums for medical, nurse, and hospital services, for medicines, and for artificial means, appliances, and prostheses necessary to treat the injured employee.

Utah Code Ann. § 34A–2–418 (2005) (emphasis added). This amendment is particularly instructive because, as the *Kennecott* court noted, the use of the phrase " *'[i]n addition to* the compensation provided for' " indicates that the legislature intended to "treat[ ] medicals as something different from the compensation in lieu of wages." 597 P.2d at 877 (quoting Utah Code Ann. § 35–1–81 (Supp. 1979) (amended and renumbered)). Moreover, because the legislature chose to insert a reference to the UODA in section 34A–2–418 without otherwise changing the substantive language, we must assume that, like the WCA, medical expenses are something *in addition to* or otherwise separate from compensation for purposes of the UODA. *See Christensen,* 642 P.2d at 756 ("A well-established canon of statutory construction provides that where a legislature amends a portion of a statute but leaves other portions unamended, or re-enacts them without change, the legislature is presumed to have been satisfied with prior judicial constructions of the unchanged portions of the statute and to have adopted them as consistent with

---

ed the section several times. *See, e.g.,* Act of Feb. 7, 1991, ch. 136, sec. 3, § 35–1–44, 1991 Utah Laws 496, 497 (amending some defined terms, adding new terms, and renumbering); Act of Feb. 27, 1996, ch. 240, sec. 106, § 35A–3–102, 1996 Utah Laws 893, 938 (renumbering section 35–1–44 as 35A–3–102); Act of Mar. 4, 1997, ch. 375, sec. 84, § 34A–2–102, 1997 Utah Laws 1438, 1474 (renumbering section 35A–3–102 as 34A–2–102 and amending to add reference to the Utah Occupational Disease Act in definition of compensation).

5. *See* Act of Feb. 27, 1996, ch. 240, sec. 144, § 35A–3–401, 1996 Utah Laws 893, 952 (renumbering section 35–1–45 as 35A–3–401); Act of Mar. 4, 1997, ch. 375, sec. 109, § 34A–2–401, 1997 Utah Laws 1438, 1488 (renumbering sec-

tion 35A–3–401 as 34A–2–401); Workers Compensation Coverage Amendments, ch. 55, sec. 6, § 34A–2–401, 1999 Utah Laws 215, 222 (dividing section 34A–2–401 into subsections).

6. The current version provides:

(1) An employee ... who is injured ... by accident arising out of and in the course of the employee's employment, ... shall be paid:
(a) compensation for loss sustained on account of the injury or death;
(b) the amount provided in this chapter for:
(i) medical, nurse, and hospital services;
(ii) medicines; and
(iii) in case of death, the amount of funeral expenses.
Utah Code Ann. § 34A–2–401 (2005).

its own intent."); *see also Brown & Root Indus. Serv. v. Industrial Comm'n,* 947 P.2d 671, 674 (Utah 1997) (noting that compensation has been construed "to exclude medical expenses" within the meaning of WCA (citing *Kennecott,* 597 P.2d 875)); *United States Fid. & Guar. Co. v. Industrial Comm'n,* 657 P.2d 764, 766 (Utah 1983) (noting that *Kennecott* "draws a distinction between *compensation* which is paid for an injury and *medical and hospital expenses* which are paid for treatment of the injury"); *Christensen,* 642 P.2d at 756–57; *Kennecott,* 597 P.2d at 877–78.

¶ 13 Ameritech argues that the *Kennecott* and *Christensen* decisions are limited to their facts and only govern the resolution of issues related to the applicable statute of limitations. In support of its position, Ameritech notes the express provision allowing for the apportionment of medical expenses in the case of occupational disease. *See* Utah Code Ann. § 34A–3–105(2) ("[L]iability for disability, death, and medical benefits shall be apportioned between employers based on the involved employers' causal contribution to the occupational disease."). According to Ameritech, the fact that apportionment was expressly added to section 34A–3–105 after the decisions in *Kennecott* and *Christensen* indicates the legislature's intent to supersede the analysis in those cases. In addition, Ameritech argues that it would make no sense for the legislature to allow apportionment of medical expenses in the context of an occupational disease under section 34A–3–105, *see id.* § 34A–3–105, but not under section 34A–3–110, *see id.* § 34A–3–110. Consequently, Ameritech contends that the use of the term compensation in section 34A–3–110, *see id.,* must have included medical expenses as well as payments made in lieu of wages. We are not persuaded by this argument.

■ ¶ 14 First, section 34A–3–110 is limited to situations in which the occupational disease causes "disability or death." *Id.* ("The compensation payable under this chapter shall be reduced and limited to the proportion of the compensation that would be payable if the occupational disease were the sole cause of disability or death . . . .").

Here, Edmonds has not died and the Commission expressly found that "Ms. Edmonds has not shown that her carpal tunnel syndrome caused any disability, but she has required medical care." Second, the inclusion of apportionment language in section 34A–3–105 evidences the legislature's understanding of how to make allocation available. Consequently, the omission of such language in section 34A–3–110 indicates that the legislature did not intend to allow apportionment under that section. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Clyde,* 920 P.2d 1183, 1187 (Utah 1996) (concluding that where provisions in one section show that the legislature knew how to make its intent clear, absence of similar language in a different section indicates contrary intent); *State v. Hobbs,* 2003 UT App 27, ¶ 21, 64 P.3d 1218 (same); *In re A.B.,* 936 P.2d 1091, 1098 (Utah Ct.App.1997) (same). Third, to the extent that the legislature is unclear, we must interpret the UODA liberally in favor of the claimant to implement its remedial purpose. *See, e.g., State Tax Comm'n v. Industrial Comm'n,* 685 P.2d 1051, 1053 (Utah 1984) ("The [WCA] should be liberally construed and applied to provide coverage."); *Luckau v. Industrial Comm'n,* 840 P.2d 811, 815 (Utah Ct.App.1992) ("[A]ny doubts [about the interpretation of the UODA] should be resolved in favor of the applicant."). Resolving any doubts in favor of Edmonds, we conclude that the Appeals Board was correct in disallowing apportionment of medical expenses under section 34A–3–110.

¶ 15 Ameritech's final argument is that, from a public policy standpoint, it makes no sense to require an employer to pay 100% of the medical expenses for the treatment of a disease that has only a 10% contribution from industrial causes. While this argument may be appropriately made to the legislature, we simply cannot substitute our judgment for its in matters of public policy. *Cf. Anderson v. United Parcel Serv.,* 2004 UT 57, ¶ 30, 96 P.3d 903 (noting that allocation of recovery under the WCA "is a matter for legislative, rather than judicial, determination"). Had the legislature intended to require apportionment of medical expenses based on the employer's causal contribution

to the occupational disease it would have done so. *Cf., e.g.,* Utah Code Ann. § 34A–3–105 (requiring that medical expenses be apportioned between two or more employers relative to their causal contribution to the occupational disease under the WCA).[7]

## CONCLUSION

¶ 16 The UODA uses the same definition of compensation as the WCA. Consequently, because the WCA excludes medical expenses from the definition of compensation, the term compensation as used in the UODA also excludes medical expenses. Therefore, the Appeals Board of the Commission properly concluded that apportionment under Utah Code section 34A–3–110 of the Utah Occupational Disease Act was not applicable to Edmonds's medical expenses for carpal tunnel syndrome.

¶ 17 Affirmed.

¶ 18 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and WILLIAM A. THORNE JR., Judge.

---

**7.** Counsel for Edmonds noted, during oral argument, that there may be persuasive policy reasons for eliminating any dispute about medical expenses so that applicants can be treated immediately, without any confusion as to whether medical providers will be compensated.